**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**UNITED STATES OF AMERICA**

Case No.: 9:22-MJ-08332-BER-1

**v.**

**SEALED SEARCH WARRANT**

_____/

### THE NEW YORK TIMES COMPANY'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OBTAINING ACCESS TO SEARCH WARRANT COURT RECORDS WITH SUPPORTING MEMORANDUM OF LAW

The New York Times Company ("The Times"), publisher of *The New York Times*, moves to intervene in this matter for the limited purpose of unsealing and obtaining access to all documents filed with this Court related to a search warrant executed on Monday, August 8, 2022, at former President Donald J. Trump's Mar-a-Lago Palm Beach, Florida, club and residence (the "Search Warrant Records"). The requested Search Warrant Records include, without limitation: (1) the search warrant itself; (2) the search warrant application; (3) any motion to seal search warrant-related records; (4) any resultant order regarding a motion to seal; (5) any search warrant returns; and (6) all probable cause affidavits filed in support of obtaining the search warrant. President Trump has publicly confirmed and discussed the search, which has been widely reported on nationwide.[1] The Times thus requests this Court enter an Order granting it leave to intervene and immediately unsealing all Search Warrant Records currently under seal, and otherwise making all such records presently available for public review.

Specific grounds for this motion are set forth in the below memorandum of law.

---

[1] An August 10, 2022, Google search for "Trump" and "search warrant" and "Mar-a-Lago" yields over 7 million results.

**MEMORANDUM OF LAW**

**I.      Relevant Background Regarding the Search Warrant Records.**

On Monday, August 8, 2022, Federal Bureau of Investigation ("FBI") agents, acting pursuant to a search warrant, searched President Trump's Mar-a-Lago property, seizing records. The search has been the subject of intense news coverage.[2] President Trump allies have asserted that there was no legal basis for the search and that it was part of a political attack on the Republican Party by the Biden Administration.[3] According to news reports and President Trump's lawyer, the seized records are potentially records President Trump brought with him to Mar-a-

---

[2] *See, e.g., Never Before in American History: The F.B.I. Searches a Former President's Home,* N.Y. Times, Aug. 9, 2022, *available at:* https://www.nytimes.com/2022/08/10/us/politics/trump-fbi.html *Trump FBI raid: Agents seize Mar-a-Lago documents in unprecedented move,* FOX News, Aug. 10, 2022, *available at:* https://www.foxnews.com/live-news/president-donald-trump-fbi-raid-mar-a-lago-house-news; *FBI searches Trump's Mar-a-Lago home as inquiry into former president intensifies*, Miami Herald, updated Aug. 9, 2022, *available at*: https://www.miamiherald.com/news/politics-government/state-politics/article264310461.html; *What went down in FBI's Trump search*, Washington Post, Aug. 10, 2022, *available at*: https://www.washingtonpost.com/politics/2022/08/10/what-went-down-fbis-trump-search/; *FBI Searches Trump's Mar-a-Lago Home,* WSJ Video, Aug. 9, 2022, *available at*: https://www.wsj.com/video/fbi-searches-trumps-mar-a-lago-home/A92ABE2C-9697-4C45-A3CA-7E70E2BFC074.html; *Mystery at Mar-a-Lago: What were FBI agents looking for and what are the consequences?,* NPR, Aug. 9, 2022, *available at*: https://www.npr.org/2022/08/09/1116575413/mar-a-lago-fbi-raid-trump-search; *FBI search of Mar-a-Lago came after suspicions of withheld materials*, CNN, updated Aug. 9, 2022, *available at:* https://www.cnn.com/2022/08/09/politics/donald-trump-document-investigation-mar-a-lago-search/index.html.

[3] *See, e.g., GOP Casts trump as Victim, attacks BI in Midterm Rally Cry,* Bloomberg, Aug. 9, 2022, *available at:* https://www.bloomberg.com/news/articles/2022-08-09/gop-casts-trump-as-victim-attacks-fbi-in-midterm-rallying-cry; *House GOP rallies to Trump after Mar-a-Lago search, vows to probe FBI in 2023,* Politico, Aug. 8, 2022, *available at:* https://www.politico.com/news/2022/08/08/trump-mar-a-lago-gop-00050459.

Lago from the White House, including classified documents. Mr. Trump has publicly and vociferously challenged the Justice Department's and FBI's actions.

To date, despite the immense public interest in the search, the public, including The Times, has been prevented from accessing any court records related to this search warrant, including the warrant itself. Southern District of Florida practice is typically to seal search warrant matters at least until the warrant is executed, but not in perpetuity. In addition, the typical docket is not readily available.

This matter is one of utmost public interest, involving the actions of current and former government officials. President Trump decried the search as an "assault that could only take place in broken, Third-World Countries," asserted agents "even broke into my safe," and otherwise publicly challenged the validity of the search and governmental action. *See* Maggie Haberman, Ben Protess and Adam Goldman, *The search appears to signal a major escalation in the various investigations into the Trump presidency*, N.Y. Times, Aug. 8, 2022, *available at*: https://www.nytimes.com/2022/08/08/us/politics/trump-fbi-mar-a-lago.html. Additionally, President Trump's legal counsel, Christina Bobb, who received a copy of the warrant, stated that federal agents sought "presidential records or any possibly classified material." *See* Maggie Haberman, Ben Protess, Michael S. Schmidt, Luke Broadwater and William K. Rashbaum, *F.B.I. Search of Trump's Home Pushes Long Conflict Into Public View*, N.Y. Times, Aug. 9, 2022, *available at*: https://www.nytimes.com/2022/08/09/us/politics/fbi-search-trump.html. Elected officials, including House Minority Leader Kevin McCarthy, have criticized the search and the Justice Department. *See* Maggie Haberman, et al., *The search appears to signal a major escalation in the various investigations into the Trump presidency* (link provided above). Indeed, questions

swirl about whether the search involved government material President Trump unlawfully brought with him from the White House.

The Times has devoted significant newsgathering resources to providing the public with information about this unprecedented search in a political climate in which the uncertainty about the purpose and basis of the search is fueling recriminations and unbridled partisanship. Access to all Search Warrant Records—which currently appear to be under seal—would facilitate its efforts to inform the public of these highly newsworthy events in a timely and comprehensive manner.

## II.     The Times Has Standing to Intervene.

The Eleventh Circuit has recognized the news media's right to intervene in matters to challenge the denial of access to court records. *See, e.g.*, *United States v. Ellis*, 90 F.3d 447, 449 (11th Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983). Only through intervention can the public's right to open courts and records be vindicated. *See Newman*, 696 F.2d at 800.

There is no question that The Times has standing to intervene for access as a news organization. It publishes *The New York Times*, a daily newspaper of general circulation throughout the United States and the world. The Times also maintains a news website at www.nytimes.com. Its journalists use public records, including court records, as important newsgathering sources. For decades, The Times has reported on Donald J. Trump. Such coverage has focused on all aspects of his social, business, and political life—including his term as president and various legal controversies. The Times continues to cover and report on President Trump, who might be contemplating another run for president.

**III.     This Court Should Grant The Times Access To The Search Warrant Records.**

       **A.  A Presumptive Right Of Access Attaches To The Search Warrant Records.**

The public and news media enjoy long-established First Amendment and common law rights to attend criminal trials. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575, 580 (1980). This right has been extended both to criminal trial proceedings and certain court records. *See, e.g.*, *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 10, 13 (1986) ("*Press-Enterprise II*") (right of access to preliminary hearings); *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984) (right of access to voir dire); *Associated Press v. United States District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) (right of access to court records and transcripts). The constitutional right attaches to records that have been historically available to the public and whose disclosure advances the functioning of the judicial system. *Press-Enterprise II*, 487 U.S. at 8-9. Under that analysis, the First Amendment right has been found to attach to search warrant materials. *See United States v. Shenberg*, 791 F. Supp. 292, 293 (S.D. Fla. 1991) (finding a First Amendment right of access applies to search warrant records). A common law right to access judicial records has also been recognized by the Supreme Court. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597-98 (1978). That right has also been recognized as applying to search warrant materials. *See In re Search of Office Suites for World and Islam Studies Enter.*, 925 F. Supp. 738, 742 (M.D. Fla. 1996) (finding common law right of access applies to search warrant records). The presumptive right can be overcome only if the government demonstrates an overriding interest to justify sealing and such sealing is no more restrictive than required to protect that interest. *See id.*

Both rights of access are grounded in the value afforded to public monitoring of judicial proceedings. "[The] right to inspect and copy judicial records…like the right to attend judicial

proceedings, is important if the public is to appreciate fully the often significant events at issue in public litigation and the workings of the legal system." *Newman* 696 F.2d at 803. Just as with open court proceedings, broad public access to filed court records helps ensure "that the proceedings [are being] conducted fairly," while discouraging "perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Richmond Newspapers*, 448 U.S. at 569; *see also Associated Press*, 705 F.2d at 1145 ("there is no reason to distinguish between pretrial proceedings and the documents filed in regard to them"). Public access further promotes the "public acceptance of both the [judicial] process and its results," an "awareness that society's responses to criminal conduct are underway," and the "prophylactic aspects of . . . community catharsis." *Id.* at 571; *Press-Enterprise*, 478 U.S. at 9. For these reasons, "[a] presumption of access must be indulged to the fullest extent not incompatible with the reasons for closure." *Newman*, 696 F.2d at 802. *See also United States v. Rosenthal*, 763 F.2d 1291, 1293 (11th Cir. 2007) (recognizing "presumptive common law right to inspect and copy judicial records.")

Those policy considerations are certainly present when considering whether the Search Warrant Records should remain sealed. Indeed, "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial and judicial misconduct." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988).

> Moreover, even though a search warrant is not part of the criminal trial itself, like voir dire, a search warrant is certainly an integral part of a criminal prosecution. Search warrants are at the center of pre-trial suppression hearings, and suppression issues often determine the outcome of criminal prosecutions.

*Id.*

**B.   The Government Bears The Burden Of Overcoming Public Access Rights.**

It is the government's burden to overcome this presumption of access.  For warrant records to remain under seal a court must determine, in clearly articulated findings, that the government established a specific, compelling interest justifying an ongoing seal that is no broader than necessary to serve that interest.  *See In re Search of Office Suites*, 925 F. Supp. at 742; *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1015-16 (11th Cir. 1992); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570-71 (11th Cir. 1985).  Naked assertions of some interest justifying secrecy, devoid of particulars, will not justify closure.  Rather, for each record the government claims sealing remains necessary, it must "describe in considerable detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved."  *In re Search Warrant for Secretarial Area*, 855 F.2d at 574; *United States v. Peterson*, 627 F. Supp. 2d 1359, 1373-74 (M.D. Ga. 2008) (applying common law access right to find that government failed to meet its burden to show disclosure of search warrant records would cause harm and recognizing value of news media interest in informing public of "historically significant" events).  Likewise, to the extent any claim is made that disclosure will compromise the identities of cooperating persons, a compelling justification for continued secrecy must also be established.  *See In re Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995).  At bottom, "conclusory assertions are insufficient to allow review; specificity is required."  *In re The Baltimore Sun Co.*, 886 F.2d 60, 66 (4th Cir. 1989).

The analysis must be conducted on a record-by-record basis, so the Court must consider whether the disclosure of each individual record comprising the Search Warrant Records would compromise the government's asserted interest.  *See, e.g.*, *Wellcare Health Plans, Inc.*, No. 8:07-MJ-1466-TGW, 2007 WL 4240740, at *1 (M.D. Fla. Nov. 28, 2007) (assessing each warrant-

related document individually and finding warrant, exhibits, return, motion to seal and sealing order all public). Just like the *Wellcare* court determined, the presumption of access is particularly difficult to overcome for records like the warrant itself, any motion to seal, and any resulting sealing order. Additionally, records whose contents have already been acknowledged—such as in this case the particulars of the actual search warrant which was disclosed by President Trump's legal counsel—can no longer present a disclosure risk. *See U.S. v. Peterson*, 627 F.2d 1359, 1373 (M.D. Ga. 2008) (recognizing that "whether the press has already been permitted substantial access to the contents of the records" must be considered in determining whether to allow access to judicial records).

Even if the government were to establish a compelling reason to justify a continued seal, this Court must consider the proper scope of that seal and whether alternatives to total closure exist. *See In re Search of Office Suites*, 925 F. Supp. at 429. For example, this Court should consider whether the redaction of limited information would serve to protect any established compelling interest. *See, e.g.*, *Shenberg*, 791 F. Supp. at 294 (requiring redaction of certain sensitive information contained within search warrant affidavit before making it public).

Access to search warrant materials has typically occurred at the conclusion of an investigation or proceeding. *See, e.g.*, *In re Four Search Warrants*, 945 F. Supp. 1563, 1568 (N.D. Ga. 1996) (recognizing that investigation into Olympic bombing suspect had concluded as significant factor in common law access balance regarding access to search warrant records). But this is far from the typical case. The investigation has been made public by the target of the warrant himself, details of the investigation have appeared in publications throughout the world, members of Congress have demanded that the Justice Department provide an explanation, and political commentary on the search continues unabated. In short, with so much publicity surrounding the

search, the Court should be skeptical about government claims that disclosure of this true information will invade privacy, disturb the confidentiality of an investigation, tip off potential witnesses, or lead to the destruction of evidence.

### C. The Public Interest In Current And Former Government Officials' Actions Is Particularly High And Favors Access.

Investigations regarding the conduct of public officials are of the utmost public interest. Naturally, courts have recognized that interest while assessing public access rights, and that consideration weighs heavily in any balance between competing access rights and secrecy concerns. *See, e.g.*, *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) ("[i]n balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider…whether the information concerns public officials or public concerns…."); *United States v. Beckham*, 789 F.2d 401, 413 (6th Cir. 1986) ("[W]hen the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance toward allowing permission to copy judicial records.") *United States v. Edwards*, 672 F.2d 1289, 1294 n.11 (7th Cir. 1982) ("there is a strong presumption in support of the common law right to inspect and copy judicial records," particularly where "the trial bore upon the conduct of a public official").  There can be no doubt that President Trump's actions, particularly as to his potential mishandling of sensitive government records, along with the U.S. Department of Justice officials' decision to pursue and conduct a search of a former President's residence, is of core public concern. So too is this Court's decision to authorize that search.

### IV. Conclusion.

For the foregoing reasons, The Times respectfully requests this Court enter an Order granting it leave to intervene in this matter and providing it immediate access to the Search Warrant Records.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), The Times requests a hearing be set for this motion. Oral argument will aid this Court in assessing any further basis to continue to keep these extremely newsworthy records secret and allow this Court to directly inquire into any government justification for doing so. The Times estimates the time required for argument to be sixty (60) minutes.

**LOCAL RULE 7.1(a)(3) CERTIFICATE OF GOOD-FAITH CONFERENCE**

Undersigned counsel for The New York Times Company hereby certifies that on the afternoon of August 10, 2022, she made reasonable efforts to confer with the Assistant United States Attorney for the Southern District of Florida handling the matter, leaving a message with their office. Given the exigency of this filing, undersigned counsel was not, however, able to confer before filing this motion as she has yet to receive a return telephone call.

Dated: August 10, 2022

Respectfully submitted,

THOMAS & LOCICERO PL

/s/ *Carol Jean LoCicero*
Carol Jean LoCicero (FBN 603030)
Mark R. Caramanica (FBN 110581)
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
clocicero@tlolawfirm.com
mcaramanica@tlolawfirm.com
tgilley@tlolawfirm.com
dlake@tlolawfirm.com

Dana J. McElroy (FBN 845906)
915 Middle River Drive, Suite 309
Fort Lauderdale, FL 33304
Telephone: (954) 703-3418
Facsimile: (954) 400-5415
dmcelroy@tlolawfirm.com

bbrennan@tlolawfirm.com

*Attorneys for The New York Times Company*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2022, a true and correct copy of the foregoing document is being electronically filed and will be furnished via CM/ECF. A copy of the foregoing is also being served by email and first-class mail, postage paid, to:

Juan Antonio Gonzalez
U.S. Attorney's Office
Southern District of Florida
98 NE 4th Street, Floor 8
Miami, FL 33132-2131
juan.antonio.gonzalez@usdoj.gov

/s/ *Carol Jean LoCicero*
Carol Jean LoCicero