**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA

                                                Case No.: 9:22-mj-08332-BER

v.

SEALED SEARCH WARRANT
_____/

**MOTION OF THE WASHINGTON POST, CNN, NBC NEWS, AND SCRIPPS
TO INTERVENE, FOR ACCESS TO ALL SEARCH WARRANT RECORDS,
AND IN SUPPORT OF THE UNITED STATES' PARTIAL MOTION TO UNSEAL**

As the United States informed the Court today in seeking to partially unseal records: "The public's clear and powerful interest in understanding what occurred in these circumstances weighs heavily in favor of unsealing." ECF No. 18 at 4. Indeed, that "clear and powerful interest" in understanding these unprecedented events "weighs heavily in favor of unsealing" the entire record filed with this Court.

Before the events of this week, not since the Nixon Administration had the federal government wielded its power to seize records from a former President in such a public fashion. Because of the historic importance of these events, WP Company LLC d/b/a The Washington Post, Cable News Network, Inc. ("CNN"), NBCUniversal Media, LLC d/b/a NBC News, and the E.W. Scripps Company ("Scripps") (together, the "Media Intervenors") move to intervene in this matter for the limited purpose of (1) seeking an order unsealing and providing public access to all documents filed with this Court related to the search warrant executed on August 8, 2022 at former President Donald J. Trump's residence at the Mar-a-Lago Club in Palm Beach (the "Search Warrant Records"); (2) supporting the United States' Motion to Unseal Limited Warrant Materials filed this afternoon. ECF No. 18.

Specifically, the Media Intervenors seek access to the following Search Warrant Records: (1) the search warrants with Attachments A and B as identified in the United States' Motion; (2) the warrant application; (3) all probable cause affidavits filed in support of the search warrant; (4) any motion to seal the warrant-related records; (5) any order sealing the warrant-related records; (6) any search warrant return; and (7) any other records filed with this Court in connection with the search warrant. The Media Intervenors are news organizations and are entitled, as members of the public, to view judicial records. The tremendous public interest in these records in particular outweighs any purported interest in keeping them secret.

## MEMORANDUM OF LAW

### I.    BACKGROUND

On the morning of August 8, 2022, agents from the Federal Bureau of Investigation ("FBI") arrived at former President Donald J. Trump's home at Mar-a-Lago and, over the course of several hours, executed a search warrant and seized multiple boxes of records.[1] The search, as it should be, has been the subject of massive media reporting in the days since. Trump himself quickly confirmed the search,[2] and he and his supporters, including Members of Congress, have condemned the FBI's actions as a political "witch hunt."[3]

---

[1] Kaitlan Collins, et al., *FBI executes search warrant at Trump's Mar-a-Lago in document investigation*, CNN (Aug. 9, 2022), https://www.cnn.com/2022/08/08/politics/mar-a-lago-search-warrant-fbi-donald-trump/index.html.

[2] Marc Caputo and Ryan J. Reilly, *FBI search at Trump's Mar-a-Lago home tied to classified material, sources say*, NBC NEWS (Aug. 8, 2022), https://www.nbcnews.com/politics/donald-trump/trump-says-mar-lago-home-was-raided-large-group-fbi-agents-rcna42133.

[3] Sarah N. Lynch and Karen Freifeld, *Trump uses FBI search of his Mar-a-Lago home to solicit campaign donations*, REUTERS (Aug. 9, 2022), https://www.reuters.com/legal/trump-seeks-raise-money-off-news-fbi-search-his-florida-home-2022-08-09/.

According to Trump's lawyer, the warrant was aimed at finding classified documents that allegedly were removed from the White House and brought to Mar-a-Lago in violation of federal law.[4] Federal agents reportedly broke a lock, opened the former President's safe, riffled through closets, and seized approximately 12 boxes of documents containing what may be highly sensitive, classified records.[5] The materials that may have unlawfully been removed implicate Trump in potential violations of the Presidential Records Act and laws governing the handling of classified materials.[6] Not since the Nixon Administration[7] has a President been the subject of such a dramatic and public criminal process. The Media Intervenors are among the news organizations that have reported on the search and are attempting to shed light on the federal government's unprecedented actions and motivations.

## II.     ARGUMENT

### A.     The Media Intervenors Have Standing to Intervene in this Matter.

As the Eleventh Circuit has recognized, "[t]he press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1170 (11th Cir. 2019); *see also Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983). The Media Intervenors are news organizations that have been covering the execution of the search warrant at

---

[4] Devlin Barrett, et al., *Mar-a-Lago search appears focused on whether Trump, aides withheld items*, WASHINGTON POST (Aug. 9, 2022), https://www.washingtonpost.com/national-security/2022/08/09/trump-fbi-search-mar-a-lago/.

[5] *Id.*

[6] *Id.*

[7] *See, e.g.*, *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589 (1978); *United States v. Nixon*, 418 U.S. 683 (1974).

Mar-a-Lago, and they therefore have standing to intervene for the limited purpose of seeking access to the Search Warrant Records.

### B. The Court Should Unseal All of the Search Warrant Records.

#### 1. The Search Warrant Materials Are Judicial Records to Which the Public Has a Presumptive Right of Access.

Both the First Amendment and the common law protect the media and the general public's right of access to judicial proceedings and records. *See Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310-11 (11th Cir. 2001). The Eleventh Circuit "has been resolute" in enforcing the "presumption of public access" to judicial records because "access to judicial proceedings is crucial to our tradition and history, as well as to continued public confidence in our system of justice." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1358-59 (11th Cir. 2021). Search warrants and the documents filed in support of search warrant applications are judicial records entitled to this presumption of access. *See, e.g.*, *United States v. Peterson*, 627 F. Supp. 2d 1359, 1374 (M.D. Ga. 2008); *United States v. Vives*, 2006 U.S. Dist. LEXIS 92973, at *2-3 (S.D. Fla. Dec. 21, 2006); *In re Four Search Warrants*, 945 F. Supp. 1563, 1567 (N.D. Ga. 1996); *In re Search of Office Suites for World & Islam Studies Enter.*, 925 F. Supp. 738, 742 (M.D. Fla. 1996); *United States v. Shenberg*, 791 F. Supp. 292, 293 (S.D. Fla. 1991).[8] As one court has explained, "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on

---

[8] *See also, e.g.*, *L.A. Times Commcn's, LLC v. United States (In re L.A. Times Commc'ns LLC)*, 28 F.4th 292, 297 (D.C. Cir. 2022); *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989); *In re Search Warrant for Secretarial Area Outside Office of Gunn* ("*Gunn*"), 855 F.2d 569, 573 (8th Cir. 1988).

4

prosecutorial or judicial misconduct." *Gunn*, 855 F.2d at 573.  Thus, in general, "once the warrant and application have been returned to the court, the public and press should have full access." *In re Search of Office Suites*, 925 F. Supp. at 742.

### 2. The Government Has Acknowledged that the Presumption of Public Access Outweighs Other Interests Here.

Ordinarily, in addressing motions like this one, the Court puts the government to the test of satisfying its burden to demonstrate that access should be denied, given the presumption of access that attaches to search warrant records.  *See Peterson*, 627 F. Supp. 2d at 1374 (granting motion to unseal where government "failed to articulate a sufficient reason to keep the warrant and affidavit under seal"); *In re Search of Office Suites*, 925 F. Supp. at 742 (government must show "compelling reasons" for sealing of search warrant materials); *Vives*, 2006 U.S. Dist. LEXIS 92973, at *3 (government must show that "sealing is essential to preserve higher values").  In every case, and for every item of information, the government's arguments for sealing must be "supported by the record." *Newman*, 696 F.2d at 803.  The Court then undertakes this analysis for each document sought to be sealed.  *See, e.g.*, *Chicago Tribune Co.*, 263 F.3d at 1314-15 (holding that district court failed to make sufficient factual findings regarding "specific documents" and directing it to consider "the nature and character of the information in question," supporting its decision "by findings of fact"); *In re Search of Wellcare Health Plans, Inc.*, 2007 U.S. Dist. LEXIS 88804 (M.D. Fla. Nov. 29, 2007) (assessing each warrant document separately and determining that certain ones should be public); *Vives*, 2006 U.S. Dist. LEXIS 92973, at *2-5 (analyzing request to unseal various docket entries on document-by-document basis and unsealing, with minor redactions, draft of warrant and search warrant affidavit); *In re Search of Office Suites*, 925 F. Supp at 739 (unsealing affidavit and order sealing affidavit in support of search warrant while sealing affidavit itself).

5

In evaluating whether there is good cause to overcome the presumption of access, courts consider factors including "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." *Comm'r, Ala. Dep't of Corr.*, 918 F.3d at 1169.  Courts also consider "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, [and] whether the information concerns public officials or public concerns." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007).

Today's press conference by United States Attorney General Merrick Garland, and the United States' motion to unseal, make the Court's work in balancing interests far easier.  The government has, to its credit, affirmatively acknowledged the "public's clear and powerful interest in understanding what occurred" with respect to the search of Trump's home, and that the public's interest "weighs heavily in favor of unsealing."  ECF No. 18 at 4.  The government's position strongly supports the Media Intervenors' and public's right of access to <u>all</u> Search Warrant Records.

### 3. Trump's Reaction to the Search Also Supports Public Access to Records of this "Historically Significant" Event.

Here, there could not be a more "historically significant event" than an FBI raid of a former President's home for the alleged removal of national security records after leaving office. The Media Intervenors certainly do not seek these records for any illegitimate purpose.  To the contrary, public access to these records will promote public understanding of this historically significant, unprecedented execution of a search warrant in the residence of a former President.

6

Moreover, Trump and his attorneys have already publicly disclosed information about the subject matter of the search warrant, including that it relates to the recovery of presidential documents and is based on possible violations of the Presidential Records Act and laws concerning the handling of classified material.[9] In the words of the government, "the occurrence of the search and indications of the subject matter involved are already public." ECF No. 18 at 3.

Indeed, Trump himself has been aggressively public in discussing the search. Shortly after the search concluded, he condemned the raid in a public statement, claiming that he had been "working and cooperating with the relevant Government agencies" and charging that investigators "even broke into my safe!"[10]

---

[9] Barrett, et al., *supra* note 4.

[10] *See* Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Aug. 8, 2022), https://truthsocial.com/@realDonaldTrump/posts/108789700493889917.



- August 8, 2022 -

### Statement by Donald J. Trump, 45th President of the United States of America

These are dark times for our Nation, as my beautiful home, Mar-A-Lago in Palm Beach, Florida, is currently under siege, raided, and occupied by a large group of FBI agents. Nothing like this has ever happened to a President of the United States before. After working and cooperating with the relevant Government agencies, this unannounced raid on my home was not necessary or appropriate. It is prosecutorial misconduct, the weaponization of the Justice System, and an attack by Radical Left Democrats who desperately don't want me to run for President in 2024, especially based on recent polls, and who will likewise do anything to stop Republicans and Conservatives in the upcoming Midterm Elections. Such an assault could only take place in broken, Third-World Countries. Sadly, America has now become one of those Countries, corrupt at a level not seen before. They even broke into my safe! What is the difference between this and Watergate, where operatives broke into the Democrat National Committee? Here, in reverse, Democrats broke into the home of the 45th President of the United States.

The political persecution of President Donald J. Trump has been going on for years, with the now fully debunked Russia, Russia, Russia Scam, Impeachment Hoax #1, Impeachment Hoax #2, and so much more, it just never ends. It is political targeting at the highest level!

Hillary Clinton was allowed to delete and acid wash 33,000 E-mails AFTER they were subpoenaed by Congress. Absolutely nothing has happened to hold her accountable. She even took antique furniture, and other items from the White House.

I stood up to America's bureaucratic corruption, I restored power to the people, and truly delivered for our Country, like we have never seen before. The establishment hated it. Now, as they watch my endorsed candidates win big victories, and see my dominance in all polls, they are trying to stop me, and the Republican Party, once more. The lawlessness, political persecution, and Witch Hunt must be exposed and stopped.

I will continue to fight for the Great American People!

Given the former President's own public discussion, the seriousness of the allegations against him, and the condemnations of law enforcement by his supporters, disclosure of the Search Warrant Records could not be more in the public interest. Trump can hardly claim that his reputational or privacy interests would be harmed by public review of what he characterizes as a "witch hunt." Transparency of the search warrant process, especially here, clearly would "operate as a curb on prosecutorial or judicial misconduct," as the former President and his supporters have alleged. *Gunn*, 855 F.2d at 573. Transparency would also shed light on the basis for the FBI raid, including whether it resulted from credible information that the former

8

President may have committed violations of federal law. Therefore, to the extent that the government's motion to unseal does not include the supporting affidavits or any other materials filed in connection with the search warrant, the Media Intervenors request that those Search Warrant Records also be unsealed.

### 4. Narrow Redactions, Based on Compelling Evidence and Approved by the Court, Would Satisfy Any Ongoing Law Enforcement Interest.

Even when the government can demonstrate compelling interests, the court must examine "whether there are alternative means available" to address them, such as redaction of a document rather than sealing it in its entirety. *In re Search of Office Suites*, 925 F. Supp. at 743; *see also Romero*, 480 F.3d at 1246 (courts consider "the availability of a less onerous alternative to sealing the documents"); *Vives*, 2006 U.S. Dist. LEXIS 92973, at *3 (restrictions on access must be "narrowly tailored to serve the interest" identified). In *Vives*, for example, the court unsealed an affidavit in support of a search warrant but permitted redaction of a confidential informant number because release of that information "could hinder government investigations and lead to the identification of a cooperating witness." *Id.*

Here, much of the information about the locations within Mar-a-Lago that were searched, the former President's alleged "cooperation" with the investigation, the nature of the documents sought, and the documents seized, are already public. Any compelling government interest in the ongoing investigation that the government can demonstrate through competent, compelling proof can and should be satisfied with narrow redactions before the Court orders the remainder released. In recognition of this principle, the government in this matter has requested that the property receipt listing items seized pursuant to the search be redacted "to remove the names of law enforcement personnel who executed the search," rather than sealed in its entirety. ECF No.

18 at 2 & n.2. As the law requires, the Court should make as much of the Search Warrant Materials available to the public as possible.

## III.   CONCLUSION

For the foregoing reasons, the Media Intervenors respectfully request that the Court grant their motion to intervene and unseal <u>any and all</u> Search Warrant Records.

### REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the Media Intervenors request that the Court set a hearing on this motion. In light of the Court's task in reviewing the interests that the government or Trump may assert, considering the many facts already publicly known about the investigation of Trump, and weighing the colossal public interest in the records, a public hearing would assist the Court and further the public's interest in transparency. The Media Intervenors estimate that the time required for argument would be one hour.

### CERTIFICATION OF GOOD-FAITH CONFERENCE

Pursuant to Local Rules 7.1(b)(2) and 88.9(a), undersigned counsel certifies that on the morning of August 11, 2022, he made reasonable efforts to confer with the United States Attorney's Office for the Southern District of Florida, including leaving voicemail messages with the West Palm Beach office and the Public Information Officer and sending an email to the Public Information Officer. Later that morning, the Public Information Officer courteously responded by email that she would discuss the government's position with the relevant attorneys and be in touch with a response. At the time of this filing, undersigned counsel has received no further communications from the government, but the government has made its position clear through its motion to unseal limited Search Warrant Records. ECF No. 18.

Dated: August 11, 2022						Respectfully submitted,

BALLARD SPAHR LLP

By:	*/s/ Charles D. Tobin*
	Charles D. Tobin
	Florida Bar No. 816345
	1909 K Street NW, 12th Floor
	Washington, DC 20006
	Telephone: 202.661.2218
	Facsimile: 202.661.2299
	tobinc@ballarspahr.com

	Elizabeth Seidlin-Bernstein (*pro hac vice forthcoming*)
	1735 Market Street, 51st Floor
	Philadelphia, PA 19103-7599
	Telephone: 215.665.8500
	Facsimile: 215.864.8999
	seidline@ballardspahr.com

*Attorneys for Proposed Intervenors WP Company LLC, Cable News Network, Inc., NBCUniversal Media, LLC, and the E.W. Scripps Company*

11