UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE SEALED SEARCH WARRANT

CASE NO. 22-MJ-8332-BER

_____/

**NON-PARTY DOW JONES & COMPANY, INC.'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF MOVING TO UNSEAL WARRANT MATERIALS**

Dow Jones & Company, Inc. ("Dow Jones"), the publisher of *The Wall Street Journal*, seeks leave to intervene in this matter for the limited purpose of moving to unseal all materials related to the search warrant executed on August 8, 2022, at the home of former President Donald Trump. Specifically, Dow Jones requests that the Court unseal all documents related to the search warrant at issue, including (1) the warrant itself with Attachments A and B, as identified in the United States' Motion to Unseal (D.E. 17, at 1–2); (2) the warrant application; (3) all probable cause affidavits filed to support the search warrant; (4) any motion to seal the warrant-related records; (5) any order sealing any documents in this case; (6) any search warrant return(s); and (7) all other records, if any, filed with this Court in connection with the search warrant. As grounds for this motion, Dow Jones states as follows.

**MEMORANDUM OF LAW**

**I.  BACKGROUND**

The Court, which signed off on the warrant at issue, is deeply familiar with the facts of this case. Stated briefly, on August 8, 2022, the U.S. Department of Justice executed the warrant at Mr. Trump's home, located at 1100 S. Ocean Blvd., Palm Beach, Florida 33480. The search ignited an

immediate and intense public interest as well as a vociferous reaction from Mr. Trump and his allies.

On the heels of the search, Mr. Trump issued a public statement, condemning the search as "prosecutorial misconduct, the weaponization of the Justice System," and an "assault [that] could only take place in broken, Third-World Countries."[1] And in the ensuing days, Mr. Trump and his allies have frequently decried the government's actions and portrayed it as politically motivated.[2] Amid the public controversy surrounding the search, *The Wall Street Journal* and other news organizations reported that the federal government executed the warrant to find classified documents allegedly removed from the White House and brought to Mr. Trump's home in potential violation of federal law.[3]

Although the warrant, supporting affidavits, and all related documents appeared under seal in this matter, the U.S. Government and several media entities have petitioned the Court to unseal documents related to the search warrant. (D.E. 4, 6, 8, 9, 18, 20, 22.) As shown below, because no compelling reason now exists to maintain the records under seal, Dow Jones seeks intervention and asks the Court to unseal, without limitation, all materials currently under seal in this matter.

---

[1] Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Aug. 8, 2022), https://truthsocial.com/@realDonaldTrump/posts/108789700493889917.

[2] Siobhan Hughes, Alex Leary, & Deborah Acosta, *Search of Trump's Home Roils 2022 Midterms, 2024 Presidential Race*, THE WALL STREET JOURNAL (Aug. 9, 2022), https://www.wsj.com/articles/search-of-trumps-home-roils-2022-midterms-2024-presidential-race-11660062596.

[3] Jan Wolfe, *Donald Trump's Mar-a-Lago Home Searched by FBI: What to Know*, THE WALL STREET JOURNAL (Aug. 12, 2022), https://www.wsj.com/articles/donald-trump-search-mar-a-lago-fbi-11660267417.

## II. DOW JONES HAS STANDING TO INTERVENE

The Eleventh Circuit has repeatedly recognized the propriety of allowing the public and the press to intervene in connection with the sealing of court records. *See, e.g., Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) ("Because it is the rights of the public . . . that are at stake, any member of the public has standing to . . . unseal the court file in the event the record has been improperly sealed"); *In re Petition of Tribune Co.*, 784 F.2d 1518, 1521 (11th Cir. 1986) ("The press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records"); *Newman v. Graddick*, 696 F.2d 796, 800 (11th Cir. 1983) ("This Court has upheld the press's standing to seek access in suits to which it is not a party."). *The Wall Street Journal* and Dow Jones's other publications have closely followed and reported on Mr. Trump for several decades, including the events of the last four days. Pursuant to the above authority, the Court has already recognized the right of the press to intervene. (D.E. 11.) For this reason, Dow Jones requests permission to intervene in this action.

## III. THE SEARCH WARRANT RECORDS SHOULD BE UNSEALED

**A. The public enjoys a presumptive right of access to judicial documents.**

The public's presumptive right of access to court records is rooted in both the First Amendment and the common law. *See U.S. v. Ochoa-Vasquez*, 428 F.3d 1015, 1029–30 (11th Cir. 2005) (noting that the "press and public [] enjoy a common-law right of access to judicial records," and holding that orders sealing documents violated the First Amendment) (citation omitted). The Eleventh Circuit in *Ochoa-Vasquez* specifically recognized the "inherent dangers to freedom" and the public suspicion raised when courts conduct proceedings in secret because "[p]ublic trials and judicial proceedings are rooted in the principle that justice cannot survive behind walls of silence." *Id.* at 1029 (citations omitted). *See also Callahan v. United Network for Organ Sharing*, 17 F.4th

1356, 1358–59 (11th Cir. 2021) ("access to judicial proceedings is crucial to our tradition and history, as well as to continued public confidence in our system of justice.") *See also United States v. Peterson*, 627 F. Supp. 2d 1359, 1374 (M.D. Ga. 2008) (noting that documents related to search warrants are entitled to a presumption of public access); *In re Four Search Warrants*, 945 F. Supp. 1563, 1568 (N.D. Ga. 1996) (same).

Although the right of access to court records is not absolute, the public's right of access may be abridged only if closure serves a compelling or substantial interest and is no greater than necessary to serve that interest. *Ochoa-Vasquez*, 428 F.3d at 1030; *Newman v. Graddick*, 696 F.2d 796, 802 (11th Cir. 1983). *See also Press Enterprise v. Superior Court,* 464 U.S. 501, 510 (1984) (explaining that the court must make articulated and specific "findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.") Thus, the records at issue in this case are presumptively accessible to the public and must be disclosed, absent compelling, competing interests—as demonstrated by specific factual findings—and a narrowly tailored solution to serve those interests.

**B.  All relevant factors weigh in favor of unsealing the search-related documents.**

In this Circuit, the factors courts consider to evaluate the strength of competing and compelling interests include "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, [or] whether the information concerns public officials or public concerns." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007). Courts also evaluate "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the

4

press has already been permitted substantial access to the contents of the records." *Comm'r, Alabama Dep't of Corr. v. Advance Local Media, LLC,* 918 F.3d 1161, 1169 (11th Cir. 2019) (citation omitted).

Every factor outlined by the Eleventh Circuit in *Romero* and *Advance Local Media* weigh heavily in favor of access in this case.[4]

First, no privacy interest exists, as that proverbial horse fled through the gate the moment Mr. Trump published an official statement while the search was purportedly underway.[5] Since then, Mr. Trump and his counsel have spoken repeatedly about the government's search and publicly disclosed information about the alleged subject matter of the warrant, including the potential mishandling of classified documents and violations of the Presidential Records Act.[6] Relatedly, Mr. Trump assuredly has "an opportunity to respond to the information," *Romero*, 480 F.3d at 1246, as, for the last four days, he and those around him have made a series of widely circulated public statements and interviews on the matter. What's more, in a social media post

---

[4] As explained below, no compelling reasons to maintain the seal appear to exist. But to the extent the Court unearths a compelling reason for secrecy, the proper solution would be narrowly tailored redaction and disclosure, not maintaining the records under seal. *See Matter of Search of Office Suites for World & Islam Studies Enter.,* 925 F. Supp. 738, 743 (M.D. Fla. 1996); *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1244 (11th Cir. 2007).

[5] *See* Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Aug. 8, 2022), https://truthsocial.com/@realDonaldTrump/posts/108789700493889917 (stating also that he was "cooperating with the relevant Government agencies" and noting that those executing the warrant "broke into my safe!").

[6] *See, e.g.*, Sadie Gurman, Alex Leary, and Aruna Viswanatha, *FBI Search of Trump Property Prompted by Concerns Over Sensitive Documents*, THE WALL STREET JOURNAL (Aug. 9, 2022), https://www.wsj.com/articles/fbi-search-of-trumps-florida-home-mar-a-lago-is-criticized-by-republicans-11660049490.

from late in the evening on August 11, 2022, Mr. Trump stated that he is "ENCOURAGING the immediate release" of the documents.[7]

Moreover, despite the sealed documents, the press already has access to the information in the warrant pursuant to Mr. Trump's disseminated statements about where in his home the search took place and the nature of the documents sought and seized. *See Advance Local Media,* 918 F.3d at 1169. And as to the "degree of and likelihood of injury," continued concealment is likely more injurious than disclosure—as the nature of political discourse, which abhors a vacuum, has pumped all kinds of sensational suppositions into the informational void. *See Romero*, 480 F.3d at 1246. Revealing the truth will put such speculations to rest. And, as the United States properly noted in its motion, unsealing the documents at this point "would not impair court functions, including the government's ability to execute the warrant, given that the warrant has already been executed." (D.E. 18 at 3) (citing *Romero*, 480 F.3d at 1246).

Most importantly, the information is not sought for illegitimate means; the materials instead relate to a topic of profound public importance. *Romero*, 480 F.3d at 1246; *Advance Local Media,* 918 F.3d at 1169. Underscoring the intense public interest in unsealing these records—and in a highly unusual move[8]—the United States moved the Court to unseal the records and issued

---

[7] Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Aug. 11, 2022), https://truthsocial.com/@realDonaldTrump/posts/108807820697397549.

[8] The prototypical unsealing case features a government entity seeking to maintain a seal, usually because disclosure could allegedly jeopardize an ongoing investigation. *See, e.g., Bennett v. United States*, 12-61499-CIV, 2013 WL 3821625, at *7 (S.D. Fla. July 23, 2013); *United States v. Vives*, 02-20030 CR, 2006 WL 3792096, at *2 (S.D. Fla. Dec. 21, 2006); *Matter of Search of Office Suites for World & Islam Studies Enter.*, 925 F. Supp. 738, 742 (M.D. Fla. 1996). The government's extraordinary motion to unseal in this case speaks volumes. *See United States v. E. Air Lines, Inc.*, 923 F.2d 241, 245 (2d Cir. 1991) (affirming unsealing of warrant-related documents "[i]n view of the public's vital interest in [the subject of the warrant] and the government's lack of interest in further secrecy"); *United States v. Storage Room Numbers*, 01-

an official statement and press conference on the search,[9] affirming the "public's clear and powerful interest in understanding what occurred" regarding the search and explaining that the public's interest "weighs heavily in favor of unsealing." (D.E. 18 at 4.)

Indeed, few imaginable topics could capture more legitimate public interest than potential crimes committed by a former president (and possible future presidential candidate), catalyzing an allegedly politically motivated seizure of 12 boxes of documents from his home. That is, the records sought in this case pertain directly and indisputably to "public officials [and] public concerns." *See Romero*, 480 F.3d at 1246.

Clarity regarding the search warrant process would surely "operate as a curb on prosecutorial or judicial misconduct," as Mr. Trump averred. *See In re Search Warrant for Secretarial Area Outside Office of Gunn,* 855 F.2d 569, 573 (8th Cir. 1988). And transparency would provide the public with a deeper understanding about government operations and the basis by which the government was able to substantiate its reasonable suspicion that a crime had been committed, as required to obtain the search warrant. In short, unsealing the records is the best possible means "to promote public understanding of [this] historically significant event[.]"

---

MJ-1728(JS), 2021 WL 736423, at *2 (E.D.N.Y. Feb. 25, 2021) (granting a motion to unseal because the government did not oppose the motion).

[9] *See* James Freeman, *Opinion: Trump, Garland and the FBI,* THE WALL STREET JOURNAL (Aug. 11, 2022), https://www.wsj.com/articles/trump-garland-and-the-fbi-11660247705 (commenting on U.S. Attorney General Merrick Garland's issuance of an official statement regarding the warrant). *See also* Aruna Viswanatha, Sadie Gruman & Alex Leary, *Attorney General Merrick Garland Asks Court to Release Trump Search Warrant*, THE WALL STREET JOURNAL (Aug. 11, 2022), https://www.wsj.com/articles/justice-department-asks-judge-to-unseal-mar-a-lago-search-warrant-11660245559 (featuring a video of Mr. Garland's statement, which expounds on the Justice Department's reasons for seeking to unseal the warrant and related materials: that Mr. Trump publicly acknowledged the search and that public interest in the materials is exceptionally high).

*Advance Local Media,* 918 F.3d at 1169. *See also In re Four Search Warrants*, 945 F. Supp. at 1569 (unsealing warrant-related records because disclosure furthered the public's understanding of the legal system, helped preserve of the integrity of the fact-finding process, and furthered the appearance of fairness) (citing *Newman*, 696 F.2d at 801).

In sum, no apparent reason exists for continued concealment—much less a compelling one. Conversely, the presumptive First Amendment and common law right of access to the records—bolstered by all the relevant factors outlined above—all but mandate that the records be unsealed.

### IV.  CONCLUSION

The unsealing analysis begins with a presumption for disclosure that is overcome only by compelling, competing interests. In this historically extraordinary circumstance, every germane interest is aligned in favor of disclosure. Because no compelling reason exists to maintain the records under seal, Dow Jones respectfully asks the Court to unseal, without limitation, all materials currently under seal in this matter.

### REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Dow Jones requests a hearing for this motion to assist the Court in determining whether any compelling reasons exists for maintaining the warrant-related documents under seal. Dow Jones estimates the time required for argument to be sixty minutes.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

The undersigned certifies that on the morning of August 12, 2022, she made reasonable efforts to confer with the Assistant United States Attorney for the Southern District of Florida handling the matter, leaving a message with their office about news media intervention. She has

yet to receive a return telephone call. Pursuant to (D.E. 18), the United States does not oppose the release of many search-related documents.

Dated: August 12, 2022

                                    Respectfully submitted,

SHULLMAN FUGATE PLLC

*/s/ Rachel E. Fugate*
Rachel E. Fugate
Florida Bar No. 144029
rfugate@shullmanfugate.com
Deanna K. Shullman
Florida Bar No. 514462
dshullman@shullmanfugate.com
Minch Minchin
Florida Bar No. 1015950
mminchin@shullmanfugate.com
2101 Vista Parkway, Suite 4006
West Palm Beach, Florida 33411
Telephone: (813) 935-5098
*Attorneys for Dow Jones & Company, Inc.*