UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-MJ-8332-BER

IN RE SEALED SEARCH WARRANT

_____/

## UNITED STATES' OMNIBUS RESPONSE TO MOTIONS TO UNSEAL

On August 8, 2022, the Department of Justice executed a search warrant at the premises located at 1100 S. Ocean Blvd., Palm Beach, Florida 33480, a property of former President Donald J. Trump.  Given the circumstances presented in this matter and the public interest in transparency, and in the wake of the former President's public confirmation of the search and his representatives' public characterizations of the materials sought, the government moved to unseal the search warrant, its attachments, and the Property Receipt summarizing materials seized, which motion this Court granted.  Those docketed items, which had already been provided to the former President's counsel upon execution of the warrant, have now appropriately been made public.  The affidavit supporting the search warrant presents a very different set of considerations.  There remain compelling reasons, including to protect the integrity of an ongoing law enforcement investigation that implicates national security, that support keeping the affidavit sealed.[1]

The government does not object to unsealing other materials filed in connection with

---

[1] The government has carefully considered whether the affidavit can be released subject to redactions.  For the reasons discussed below, the redactions necessary to mitigate harms to the integrity of the investigation would be so extensive as to render the remaining unsealed text devoid of meaningful content, and the release of such a redacted version would not serve any public interest.  Nevertheless, should the Court order partial unsealing of the affidavit, the government respectfully requests an opportunity to provide the Court with proposed redactions.

the search warrant whose unsealing would not jeopardize the integrity of this national security investigation, subject to minor redactions to protect government personnel, namely: cover sheets associated with the search warrant application, Docket Entry ("D.E.") 1; the government's motion to seal, D.E. 2; and the Court's sealing order, D.E. 3. The government's proposed redactions to those documents have been filed under seal as D.E. 57, and the government now asks the Court to unseal the materials contained in that filing.[2]

## Procedural Background

In recent days, following the execution of the search warrant, several news media organizations and other entities asked this Court to unseal the search warrant and related documents. *See* D.E. 4 (motion by Judicial Watch, Inc.) (Aug. 10, 2022); D.E. 6 (letter motion by *Times Union*) (Aug. 10, 2022); D.E. 8 (motion by New York Times Company) (Aug. 10, 2022); D.E. 20 (motion by CBS Broadcasting, Inc.) (Aug. 11, 2022); D.E. 22 (motion by Washington Post Company et al.) (Aug. 11, 2022); D.E. 23 (motion by *Palm Beach Post*) (Aug. 12, 2022); D.E. 30 (motion by Florida Center for Government Accountability) (Aug. 12, 2022); D.E. 31 (motion by *Miami Herald* and *Tampa Bay Times*) (Aug. 12, 2022); D.E. 32 (motion by Dow Jones & Company, Inc.) (Aug. 12, 2022); D.E. 33 (motion by Associated Press) (Aug. 12, 2022); D.E. 49 (motion by ABC, Inc.) (Aug. 15, 2022).

On August 10, 2022, after the filing of the first motion to unseal, the Court ordered the

---

[2] None of these documents contains new information that may implicate the privacy interests of former President Trump, so the government has not conferred with his counsel regarding their unsealing. In response to a request from the Washington Post Company group of intervenors (D.E. 22), the government conferred with counsel for those intervenors, who do not object to the proposed redactions. The government recognizes that they or other parties may seek additional time to file reply pleadings addressing any remaining disputed document(s), and the government does not object to such requests.

government to file a response by 5:00 p.m. Eastern time on August 15, 2022.  D.E. 5. Following two additional such filings and in order to "avoid the need for individualized orders on any future motion(s) to unseal," the Court directed the government to file "an omnibus response to all motions to unseal on or before 5:00 p.m. Eastern time on August 15, 2022." D.E. 12.

On August 12, 2022, the government filed its own motion with the Court seeking to unseal, absent objection by the former President: (1) "the search warrant signed and approved by the Court on August 5, 2022, including Attachments A and B," and (2) "the redacted Property Receipt listing items seized pursuant to the search, filed with the Court on August 11, 2022."  D.E. 18.  The Court ordered the government to serve a copy of its motion on counsel for the former President and to advise the Court by 3:00 p.m. Eastern time on August 12, 2022, whether the former President opposed the government's motion.  D.E. 19.  In accordance with that order and following consultation with the former President's counsel, the government notified the Court that the former President did not object to its motion to unseal.  D.E. 40.  The Court then granted the government's motion and unsealed the above-listed documents.  D.E. 41.

## Argument

### Disclosure of the Search Warrant Affidavit Would Irreparably Harm the Government's Ongoing Criminal Investigation

The press and the public enjoy a qualified right of access to judicial proceedings and the judicial records filed therein.  *See, e.g., Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001).  The unsealing of judicial materials pursuant to the common-law right of access "requires a balancing of competing interests."  *Chicago Tribune Co.*, 263 F.3d at 1311.  "In

3

balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Romero*, 480 F.3d at 1246.[3]

"In the Eleventh Circuit, potential prejudice to an ongoing criminal investigation represents a compelling government interest that justifies the closure of judicial records." *Bennett v. United States*, No. 12-61499-CIV, 2013 WL 3821625, at *4 (S.D. Fla. July 23, 2013) (Rosenbaum, J.) (citing *United States v. Valenti*, 986 F.2d 708 (11th Cir. 1993)).  See generally *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979) ("if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony," and "[t]here would also be the risk that those about to be indicted would flee, or

---

[3] In addition, the First Amendment provides a basis for the press and the public's "right of access to criminal trial proceedings." *Chicago Tribune Co.*, 263 F.3d at 1310.  However, this Circuit has not addressed whether the First Amendment right of access applies to sealed search warrant materials.  *See, e.g.*, *Bennett v. United States*, No. 12-61499-CIV, 2013 WL 3821625, at *3 (S.D. Fla. July 23, 2013) ("this Court has found no Eleventh Circuit decisions addressing whether a First Amendment right of access extends to sealed search-warrant affidavits, particularly at the preindictment stage").  The better view is that no First Amendment right to access pre-indictment warrant materials exists because there is no tradition of public access to *ex parte* warrant proceedings.  *See In re Search of Fair Finance*, 692 F. 3d 424, 429-33 (6th Cir. 2012); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989); *Times Mirror Co. v. United States*, 873 F. 2d 1210, 1212-18 (9th Cir. 1989).  In any event, the Court need not determine whether a First Amendment right of access to search warrant affidavits attaches at this stage of an investigation because, even if there were such a right, a "compelling government interest," *Bennett*, 2013 WL 3821625, at *4, favors keeping the remaining materials under seal for the reasons laid out below.

would try to influence individual grand jurors"). In *Valenti*, for example, the Eleventh Circuit concluded that the district court properly denied a newspaper's motion to unseal transcripts from closed court proceedings "as a necessary means to achieving the government's compelling interest in the protection of a continuing law enforcement investigation." 987 F.2d at 714.[4] As Judge Jordan explained in the context of one "highly-publicized criminal case," there are compelling reasons not to release non-public information in an ongoing investigation that could "compromise the investigation and might . . . lead to the destruction of evidence." *United States v. Steinger*, 626 F. Supp. 2d 1231, 1232, 1235 (S.D. Fla. 2009). Even when the public is already aware of the general nature of the investigation, revealing the specific contents of a search warrant affidavit could alter the investigation's trajectory, reveal ongoing and future investigative efforts, and undermine agents' ability to collect evidence or obtain truthful testimony. In addition to the implications for the investigation, the release of this type of investigative material could have "devastating consequences" for the reputations and rights of individuals whose actions and statements are described. *See Steinger*, 626 F. Supp. 2d at 1235. For these reasons, courts in this

---

[4] Out-of-circuit authority is similar. *See, e.g.*, *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 431 (4th Cir. 2005) (affirming that "the government's interest in continuing its ongoing criminal investigation outweighs the petitioners' interest in having the document opened to the press and the public"); *Matter of EyeCare Physicians of Am.*, 100 F.3d 514, 519 (7th Cir. 1996) (affirming decision not to unseal search warrant affidavits in preindictment posture because that "might very likely impair the ongoing criminal investigation," and observing that "disclosing even a redacted version of the search warrant affidavit would enable the subjects of the investigation the opportunity to alter, remove or withhold records"); *Times Mirror Co.*, 873 F.2d at 1219 ("the ends of justice would be frustrated, not served, if the public were allowed access to warrant materials in the midst of a preindictment investigation into suspected criminal activity"); *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) ("The government has demonstrated that restricting public access to [investigative] documents is necessitated by a compelling government interest—the on-going investigation.").

jurisdiction have consistently denied motions to unseal investigative records—including search warrant affidavits—in ongoing criminal investigations. *See Valenti*, 987 F.2d at 714 (affirming denial of motion to unseal transcripts from closed court proceedings); *Bennett*, 2013 WL 3821625 at *4-8 (denying motion to unseal search warrant affidavit); *Matter of Search of Office Suites for World and Islam Studies*, 925 F. Supp. 738, 743 (M.D. Fla. 1996) (denying motion to unseal search warrant affidavits because they "contain the identifications of individuals that are subjects of the Government's investigation" and they "state, at length, the scope and direction of its investigation"); *Steinger*, 626 F. Supp. 2d at 1235 (denying motion to unseal "motions, responses, replies, orders, and transcripts" related to an "ongoing federal grand jury corruption investigation").

Courts have also denied requests to partially unseal redacted versions of investigative materials where doing so would fail to protect the integrity of law enforcement investigations. *See Valenti*, 987 F.2d at 715 ("release of a redacted version" of transcripts from closed proceedings "would have been inadequate to protect the government's interest in the ongoing investigation"); *Patel v. United States*, No. 9:19-MC-81181, 2019 WL 4251269, at *4 (S.D. Fla. Sept. 9, 2019) ("Given the details contained in the [search warrant] affidavit, the Court finds that redaction of names and other identifying information would not adequately assure the Government's need to protect the integrity of an ongoing investigation."); *Bennett*, 2013 WL 3821625, at *7 ("line-by-line redaction is not practical" where the government's justifications for sealing include protecting the identities of undercover agents as well as protecting identities of potential witnesses); *Matter of Search of Office Suites for World and Islam Studies*, 925 F. Supp. at 743-44 (observing that even if release of redacted affidavits "might protect the parties named in the affidavits" it would "offer[] no shield against revealing the other aspects

of the Government's investigation," and concluding that "unsealing even a portion of [an] affidavit would reveal, either explicitly or by inference, the scope and direction of the Government's investigation"); *United States v. Corces*, No. 92-28-CR-T-17B, 1997 WL 447979, at *3 (M.D. Fla. July 28, 1997) ("redaction may be impracticable or insufficient to protect the compelling interest" in protecting law enforcement investigations).

Here, the government has a compelling, overriding interest in preserving the integrity of an ongoing criminal investigation. As the government has readily acknowledged, the circumstances here—involving a search of the premises for a former President—involve matters of significant public concern. As a result, in an effort to ensure public access to materials that no longer needed to be sealed to protect the investigation, the government sought to unseal the search warrant, its attachments describing the premises to be searched and the property to be seized, and the Property Receipt provided to the former President's counsel upon execution of the search. *See* D.E. 18. The Court granted that motion with the consent of former President Trump, who had previously received these materials, and the materials have now been made public. D.E. 40, 41. From these disclosures, the public is now aware of, among other things, the potential criminal statutes at issue in this investigation, *see* D.E. 17:4 (Attachment B to the search warrant) (permitting the government to seize materials "constituting evidence, contraband, fruits of crime, or other items illegally possessed in violation of 18 U.S.C. §§ 793, 2071, or 1519"), and the general nature of the items seized, including documents marked as classified, *see* D.E. 17:5-7 (Property Receipt). The government determined that these materials could be released without significant harm to its investigation because the search had already been executed and publicly acknowledged by the former President, and because the materials had previously been provided to the former

President through counsel.

Disclosure at this juncture of the affidavit supporting probable cause would, by contrast, cause significant and irreparable damage to this ongoing criminal investigation. As the Court is aware from its review of the affidavit, it contains, among other critically important and detailed investigative facts: highly sensitive information about witnesses, including witnesses interviewed by the government; specific investigative techniques; and information required by law to be kept under seal pursuant to Federal Rule of Criminal Procedure 6(e). If disclosed, the affidavit would serve as a roadmap to the government's ongoing investigation, providing specific details about its direction and likely course, in a manner that is highly likely to compromise future investigative steps. In addition, information about witnesses is particularly sensitive given the high-profile nature of this matter and the risk that the revelation of witness identities would impact their willingness to cooperate with the investigation.[5] Disclosure of the government's affidavit at this stage would also likely chill future cooperation by witnesses whose assistance may be sought as this investigation progresses, as well as in other high-profile investigations. The fact that this investigation implicates highly classified materials further underscores the need to protect the integrity of the investigation and exacerbates the potential for harm if information is disclosed to the public prematurely or improperly.[6]

---

[5] This is not merely a hypothetical concern, given the widely reported threats made against law enforcement personnel in the wake of the August 8 search. *See, e.g.,* Alan Feuer et al., "Armed Man Is Killed After Trying to Breach FBI's Cincinnati Office," *N.Y. Times* (Aug. 11, 2022), *available at* https://www.nytimes.com/live/2022/08/11/us/fbi-cincinnati-shooting-news; Josh Margolin, "Authorities Monitoring Online Threats Following FBI's Mar-a-Lago Raid," ABC News (Aug. 11, 2022), *available at* https://abcnews.go.com/US/authorities-monitoring-online-threats-fbis-mar-lago-raid/story?id=88199587.

[6] Given that the Court is considering motions to unseal this affidavit merely days after reviewing these materials and approving the warrant application, the government is mindful

As Judge Jordan explained in *Steinger*, the risks of disclosing specific details about an investigation are manifold and potentially devastating. *See* 626 F. Supp. 2d at 1235. Specific facts in a warrant affidavit may act as a roadmap of the ongoing investigation. Meanwhile, of their own accord, witnesses may be "hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of their testimony," *id.*, or that information they share in interviews would be publicized before any criminal proceeding has been initiated. These powerful concerns justify keeping the warrant affidavit under seal. *See also, e.g.*, *In re Search of Fair Finance*, 692 F.3d 424, 432 (6th Cir. 2012) (disclosure of search warrant materials could "reveal the government's preliminary theory of the crime being investigated," and could cause the government to "be more selective in the information it disclosed [to courts] in order to preserve the integrity of its investigations"); *Matter of Search of Office Suites for World and Islam Studies*, 925 F. Supp. at 743 (denying motion to unseal affidavits that "contain the identifications of individuals that are subjects of the Government's investigation"; that "state, at length, the scope and direction of its investigation"; and that contain "[r]eferences to cooperating witness(es) . . . throughout the documents"); *Bennett*, 2013 WL 3821625, at *4 ("protecting [the] ongoing investigation of Dr. Bennett and the Gulfstream Pain Center constitutes a compelling interest justifying continued sealing," especially in "this pre-indictment stage"); *id.* at *6 (similar).

Further, and in view of what the government has already moved to make public, there is no "less onerous alternative to sealing" the affidavit. *Romero*, 480 F.3d at 1246. Unlike

---

that this Court is familiar with the highly sensitive contents of the affidavit and the specific harms that would result from its unsealing. However, if the Court would like the government to file a sealed *ex parte* supplement that addresses with more specificity the contents of the affidavit and the harms identified in this response, the government stands ready to do so.

the Property Receipt—which the government moved to unseal subject to minor redactions, including to protect the identity of law enforcement officials—the affidavit cannot responsibly be unsealed in a redacted form absent redactions that would be so extensive as to render the document devoid of content that would meaningfully enhance the public's understanding of these events beyond the information already now in the public record. There is simply no alternative to sealing that could ensure the integrity of the government's investigation and that would prevent the inevitable efforts to read between the lines and discern the identities of certain individuals, dates, or other critical, case-specific information. *Accord Matter of Search of Office Suites for World and Islam Studies*, 925 F. Supp. at 743 ("While this court is fully cognizant of the public's and press's right of access and has carefully considered redaction of names and extraction of excerpts as a less restrictive means to protect the Government's investigation, in this instance, neither is sufficient to protect the Government's compelling interests."); *Bennett*, 2013 WL 3821625, at *8 ("Given the detailed context in which [certain] persons and their actions are discussed in the affidavit, the Court finds that redaction of names and other identifying information would not adequately protect the Government's need for closure.").

The case law cited by the intervenors is readily distinguishable. Many of those cases involved unsealing requests made well after charges were filed. *See, e.g.*, *United States v. Peterson*, 627 F. Supp. 2d 1359, 1374 (M.D. Ga. 2008) ("Defendant is already under indictment"); *United States v. Shenberg*, 791 F. Supp. 292, 293 & n.1 (S.D. Fla. 1991) (defendants were already under indictment, and charges were "well known and have been extensively reported by the media"); *United States v. Vives*, No. 02-20030 CR, 2006 WL

3792096 (S.D. Fla. Dec. 21, 2006).[7] In other cited cases that involved requests to unseal warrants in the investigation phase—in other words, before any charges—the court ultimately concluded that the government's compelling interest in protecting the integrity of its investigation outweighed any public right of access. *E.g.*, *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (rejecting disclosure request); *Bennett*, 2013 WL 3821625 (same); *Patel*, 2019 WL 4251269, at *4 ("The Court finds that unsealing the underlying [search warrant] affidavit and related documents would severely prejudice the Government's ongoing investigation"); *In re Search of Wellcare Health Plans, Inc.*, No. 8:07-MJ-1466-TGW, 2007 WL 4240740, at *2 (M.D. Fla. Nov. 28, 2007) ("The protection of this continuing law enforcement investigation is a compelling governmental interest that outweighs the public's interest in immediate access to" the warrant affidavit). And in *In re Four Search Warrants*, 945 F. Supp. 1563 (N.D. Ga. 1996), involving the 1996 Atlanta Olympic bombing investigation, "the criminal investigation into [the search subject's] participation in the bombing ha[d] ended" and he was "no longer considered a suspect" by the time the media sought the search warrant materials. *Id.* at 1568. Unsurprisingly, none of these cases concerned circumstances remotely similar to these—where there is an active investigation and a search was executed just days ago. Thus, while the intervenors quote these opinions for general principles about the right of access, the actual application of those principles in those cases favors the government's position here.

## Conclusion

This Court should deny motions by third parties to the extent they seek to unseal the

---

[7] Although the court's decision in *Vives* did not discuss the case history, the docket indicates that Vives and his codefendants were charged and tried years before the unsealing request at issue.

11

search warrant affidavit. Because the parties already have briefed this matter extensively, the government submits that the Court should rule on the motions without a hearing. The government does not object to the unsealing of Docket Entry 57.

                                                Respectfully submitted,

*/s Juan Antonio Gonzalez*
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
Florida Bar No. 897388
99 NE 4th Street, 8th Floor
Miami, FL 33132
Tel: 305-961-9001
Email: juan.antonio.gonzalez@usdoj.gov


/s *Jay I. Bratt*
JAY I. BRATT
CHIEF
Counterintelligence and Export Control Section
National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Illinois Bar No. 6187361
Tel: 202-233-0986
Email: jay.bratt2@usdoj.gov

## Certificate of Service

**I HEREBY CERTIFY** that I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing.

/s *Juan Antonio Gonzalez*
Juan Antonio Gonzalez
Assistant United States Attorney