**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

UNITED STATES OF AMERICA

                                                     Case No.: 9:22-mj-08332-BER

v.

SEALED SEARCH WARRANT

                                                  /

**CONSOLIDATED REPLY OF ALL MEDIA INTERVENORS IN FURTHER
SUPPORT OF MOTION FOR ACCESS TO ALL SEARCH WARRANT RECORDS**

Intervenors American Broadcasting Companies, Inc.; the Associated Press; Cable News Network, Inc. ("CNN"); CBS Broadcasting Inc.; Dow Jones & Company, Inc., publisher of *The Wall Street Journal*; the E.W. Scripps Company ("Scripps"); Gannett Co., Inc. d/b/a *The Palm Beach Post*; the McClatchy Company, LLC d/b/a the *Miami Herald*; NBCUniversal Media, LLC d/b/a NBC News; The New York Times Company; Times Publishing Company d/b/a the *Tampa Bay Times*; and WP Company LLC d/b/a *The Washington Post* (the "Media Intervenors") submit this consolidated reply in response to the United States' Omnibus Response to Motions to Unseal ("Resp.") (ECF No. 59) and in further support of their motions (ECF Nos. 8, 20, 22, 23, 31, 32, 33, 49) seeking an order unsealing and providing public access to all search warrant records, including the affidavit of probable cause.

The government and the Media Intervenors agree that the public has a "clear and powerful interest" in understanding the unprecedented investigation into former President Donald J. Trump's handling of classified records. They also agree that the common-law right of

access applies to the search warrant materials currently under seal.[1] They further agree that the law required release of the search warrant and property receipt, which the Court has now done, and that the cover sheets for the search warrant application, the government's motion to seal, and the Court's sealing order should be unsealed immediately as well, all with only minor redactions. And they agree that the government may be able to make a sufficient showing of a compelling interest authorizing it to maintain under seal some details of the investigation while it remains ongoing.

The government, however, has taken the position that the affidavit of probable cause must remain under seal *in its entirety*, despite the presumption of access, with little explanation as to how release would harm the ongoing investigation, and even though many details of the investigation are already public. In the government's view, the necessary redactions "would be so extensive as to render the document devoid of content that would meaningfully enhance the public's understanding of these events." Resp. at 10. This runs counter to the presumption of public access, which requires the disclosure of as much information as possible. The affidavit of probable cause should be released to the public, with only those redactions that are necessary to protect a compelling interest articulated by the government.[2]

---

[1] The government also recognizes that the distinct constitutional right of access applies to criminal proceedings, but argues that the right does not apply to pre-indictment search warrant materials. Resp. at 4 n. 3.

[2] The government has agreed to the unsealing of the cover sheets for the search warrant application, the government's motion to seal, and the Court's sealing order. Resp. at 2; ECF No. 57 (conditionally sealed filing of redacted materials). In a meet-and-confer call on August 15, 2022 with counsel for Intervenors The Washington Post, CNN, NBC News, Scripps, and the Associated Press, the government asked whether they would consent to the continued sealing of the names of additional prosecutors referenced in those documents. *(con't)*

**I. THE PUBLIC'S "CLEAR AND POWERFUL INTEREST" IN THE SEARCH WARRANT RECORDS EXTENDS TO THE AFFIDAVIT OF PROBABLE CAUSE.**

As Attorney General Merrick Garland aptly wrote when he was Chief Judge of the D.C. Circuit:

> The common-law right of public access to judicial records is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch. At bottom, it reflects the antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law."

*Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (citation omitted); *see also MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (2017) (Garland, J.) (right of access "serves to produce an informed and enlightened public opinion," to "safeguard against any attempt to employ our courts as instruments of persecution, to promote the search for truth, and to assure confidence in judicial remedies" (internal marks omitted)).

Separately, as the government notes, there is a First Amendment right of access to certain criminal proceedings. Resp. at 4 n.3. While the Eleventh Circuit has not considered whether the First Amendment right of access attaches to search warrant materials, the Eighth Circuit has recognized a First Amendment right, as has at least one court within this District. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988); *United States v. Shenberg*, 791 F. Supp. 292, 293 (S.D. Fla. 1991). Although some courts have reached different conclusions, *see* Resp. at 4 n.3 (collecting cases), the Eighth Circuit's view is more consistent with Supreme Court precedent. *See Richmond Newspapers v. Virginia*, 448 U.S.

---

Counsel consented, at that time, on behalf of that group of media. All of the undersigned counsel now agree, on behalf of their respective clients, to the temporary continued sealing of the prosecutors' names at this time. The government and counsel for the Media Intervenors have been unable to reach agreement on any other issues presently pending before the Court.

3

555, 580 (1980) (recognizing First Amendment right of access to criminal trials); *Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 12 (1986) ("It is true that unlike a criminal trial, the California preliminary hearing cannot result in the conviction of the accused and the adjudication is before a magistrate or other judicial officer without a jury.  But these features, standing alone, do not make public access any less essential to the proper functioning of the proceedings in the overall criminal justice process."); *Press-Enterprise Co. v. Super. Ct. of Cal.*, 464 U.S. 501 (1984) (recognizing First Amendment right of access to voir dire in criminal case).

Consistent with the presumption of access, the Department of Justice, under the Attorney General's leadership, has joined the Media Intervenors in recognizing that the public has a "clear and powerful interest in understanding what occurred in" the search of Trump's Mar-a-Lago residence, which "weighs heavily in favor of unsealing."  United States' Mot. to Unseal Limited Warrant Materials at 4 ("Gov't Mot.,") (ECF No. 18); *see also* Resp. at 7 ("As the government has readily acknowledged, the circumstances here—involving a search of the premises for a former President—involve matters of significant public concern.").  In recognition of that public interest, this Court acted promptly and diligently to ensure public access to redacted versions of the search warrant and property receipt.  *See* Order Granting Gov't Mot. (ECF No. 41).

That same public interest extends to the affidavit of probable cause in this matter, which outlines the government's basis for the extraordinary step of seeking the warrant to search a former President's home.  *See In re Four Search Warrants*, 945 F. Supp. 1563, 1569 (N.D. Ga. 1996) (recognizing "the public's right to understand the legal process, the preservation of the integrity of the fact-finding process, and the furtherance of the appearance of fairness" as interests favoring unsealing of search warrants).  The unsealed search warrant and property receipt revealed that Trump is under investigation for potentially violating the Espionage Act,

4

mishandling top secret documents, and obstruction of justice.  Notice of Filing of Redacted Documents (ECF No. 17).  In these circumstances, it is not merely a recitation of hornbook law to say that the public has a right to learn as much as possible, and as soon as possible, about this "historically significant event," including the details of the investigation.  *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983); *see also Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 604-05 (1982) (right of access "ensure[s] that th[e] constitutionally protected discussion of governmental affairs is an informed one" (internal marks omitted)).  Notably, the former President has made no objection to the release of any warrant materials, and in fact has gone further than the Media Intervenors, calling for "the immediate release of the completely Unredacted Affidavit" on social media.[3]

      The government has told the Court, in arguing to keep the affidavit under seal, that if it were to release the document, certain unspecified redactions would be "necessary to mitigate harms to the integrity of the investigation."[4]  Resp. at 1 n.1.  While the government characterizes those necessary redactions as "extensive" in making this argument, it admits that *some* portions of the document, if released, would not harm the investigation.  *Id.*  Yet the government thus far appears to have made no effort to identify the particular portions of the affidavit that it believes pose a risk and explain the basis for that belief, instead asserting that the Court is already "familiar with the highly sensitive contents of the affidavit and the specific harms that would result from its unsealing."  *Id.* at 8-9 n.6.  To overcome the presumption of access, this Court

---

[3] Donald J. Trump (@realDonaldTrump), TRUTH SOCIAL (Aug. 15, 2022), https://truthsocial.com/@realDonaldTrump/108830529259405266.

[4] While the government represents that a redacted document would be "devoid of meaningful content," Resp. at 1 n.1, *any* additional information about the unprecedented FBI raid on a former President's home provides "meaningful content" to the public.

must make findings of fact on the record supporting closure. *See, e.g.*, *Press-Enterprise Co.*, 464 U.S. at 510 ("The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."). The government has offered the Court little assistance in this regard, given the high level of abstraction in its response.

Any proposed redactions must be narrow, the government must explain to the Court why each redaction is necessary "to mitigate harms to the integrity of the investigation," and only those redactions determined to meet a compelling need articulated by the government after the Court conducts an *in camera* review can be justified. *See, e.g.*, *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1314-15 (11th Cir. 2001); *United States v. Vives*, 2006 U.S. Dist. LEXIS 92973, at *5 (S.D. Fla. Dec. 21, 2006). The Media Intervenors request the opportunity to be further heard by the Court should they wish to challenge any redactions in the affidavit as publicly filed.

**II.    THERE IS NO COMPELLING INTEREST IN CONTINUED SEALING OF INFORMATION ALREADY PUBLICLY DISCLOSED.**

As the government also recognized in its Motion to Unseal Limited Warrant Materials, the interest in maintaining secrecy is greatly diminished once the information contained in a judicial record has already been disclosed to the public through other sources. The government rightfully noted that the law required unsealing the warrant and property receipt because "the occurrence of the search and indications of the subject matter involved [were] already public." Gov't Mot. at 3; *see also Newman*, 696 F.2d at 803 (in deciding whether sealing is appropriate, court must consider "whether the press has already been permitted substantial access to the contents of the records"); *Washington Post v. Robinson*, 935 F.2d 282, 291-92 (D.C. Cir. 1991) (sealing not justified when same information had already been published in news reports).

Indeed, the press has already widely reported significant details about the events leading up to the search and the investigation, including that:

- Some of the materials sought in the Mar-a-Lago search related to nuclear weapons[5] and/or "special access programs"[6];

- The National Archives referred the matter to the Justice Department after it retrieved 15 boxes of materials from Mar-a-Lago in January[7];

- Some of the materials recovered by the National Archives were classified, including signals intelligence[8];

- Some of the recovered materials were torn up and needed to be taped back together[9];

---

[5] Josh Dawsey et al., *Trump's secrets: How a records dispute led the FBI to search Mar-a-Lago*, WASHINGTON POST (Aug. 13, 2022), https://www.washingtonpost.com/national-security/2022/08/13/trump-mar-a-lago-search/; Lindsay Whitehurst, *Timeline of events leading up to FBI search of Trump's home*, ASSOCIATED PRESS (Aug. 12, 2022), https://apnews.com/article/florida-donald-trump-mar-a-lago-merrick-garland-government-and-politics-5ffebbfdae66d71790195f67f282fe80.

[6] Maggie Haberman et al., *Files Seized From Trump Are Part of Espionage Act Inquiry*, NEW YORK TIMES (Aug. 12, 2022), https://www.nytimes.com/2022/08/12/us/trump-espionage-act-laws-fbi.html; Catherine Herridge et al., *FBI took boxes and documents in Trump search, sources say*, CBS NEWS (Aug. 9, 2022), https://www.cbsnews.com/news/trump-mar-a-lago-search-fbi-documents-boxes/; *see also* Jay Weaver & Michael Wilner, *Rubio suggests Mar-a-Lago search was a 'ruse' to find Jan. 6 evidence*, MIAMI HERALD (Aug. 12, 2022), https://www.miamiherald.com/news/local/article264385506.html.

[7] Dawsey et al., *supra* note 5; Whitehurst, *supra* note 5.

[8] *Id.*; Kathryn Watson, Fin Gomez, *Mar-a-Lago search warrant released, reveals FBI seized top-secret classified documents*, CBS NEWS (Aug. 12, 2022), https://www.cbsnews.com/news/mar-a-lago-search-warrant-released-today-trump-top-secret-classified-documents-espionage-act-2022-08-12/.

[9] Holmes Lybrand et al., *Timeline: The Justice Department criminal inquiry into Trump taking classified documents to Mar-a-Lago*, CNN (Aug. 12, 2022), https://www.cnn.com/2022/08/09/politics/doj-investigation-trump-documents-timeline/index.html.

- The Department of Justice launched an investigation and convened a grand jury[10];

- This spring, the Department of Justice served a subpoena on Trump seeking additional classified materials in his possession[11];

- Department of Justice officials, including Jay Bratt, the department's chief of counterintelligence and export control, met at Mar-a-Lago in June with Trump attorneys Christina Bobb and Evan Corcoran[12];

- During the June meeting, Trump briefly stopped by but did not answer any questions[13];

- Also during the June visit, the group toured storage facilities at Mar-a-Lago and reviewed some materials there[14];

---

[10] Maggie Haberman & Glenn Thrush, *Trump Lawyer Told Justice Dept. That Classified Material Had Been Returned*, NEW YORK TIMES (Aug. 13, 2022), https://www.nytimes.com/2022/08/13/us/politics/trump-classified-material-fbi.html; Robert LeGare, *Trump lawyers agree to public release of Mar-a-Lago search warrant for White House documents*, CBS NEWS (Aug. 12, 2022), https://www.cbsnews.com/news/mar-a-lago-search-warrant-release-trump-lawyers-agree-today-2022-08-12/; Michael Wilner, *Releasing Mar-a-Lago affidavit would 'irreparably harm' Trump probe, Justice Dept. says*, MIAMI HERALD (Aug. 16, 2022), https://www.miamiherald.com/news/politics-government/article264540681.html.

[11] Lybrand et al., *supra* note 9; Melissa Quinn & Robert LeGare, *Trump passports taken in FBI search of Mar-a-Lago returned to former president*, CBS NEWS (Aug. 16, 2022), https://www.cbsnews.com/news/donald-trump-passports-fbi-search-mar-a-lago/.

[12] Evan Perez et al., *Trump lawyer claimed no classified material was at Mar-a-Lago in signed letter to Justice Department*, CNN (Aug. 13, 2022), https://www.cnn.com/2022/08/13/politics/trump-attorney-classified-documents-mar-a-lago-search/index.html.

[13] Alex Leary et al., *FBI Quest for Trump Documents Started With Breeze Chats, Tour of a Crowded Closet*, THE WALL STREET JOURNAL (Aug. 10, 2022), https://www.wsj.com/articles/fbi-quest-for-trump-documents-started-with-breezy-chats-tour-of-a-crowded-closet-11660169349.

[14] Devlin Barrett et al., *Mar-a-Lago search appears focused on whether Trump, aides withheld items*, WASHINGTON POST (Aug. 9, 2022), https://www.washingtonpost.com/national-security/2022/08/09/trump-fbi-search-mar-a-lago/.

- Bratt subsequently sent an email to Corcoran instructing him to further secure the area where the documents were kept[15];

- One of Trump's attorneys signed a letter to the Department of Justice stating that all materials marked as classified and held in storage at Mar-a-Lago had been turned over[16];

- The Department of Justice also subpoenaed surveillance footage from Mar-a-Lago, which showed that boxes were moved in and out the storage room where the records at issue were kept[17]; and

- Justice Department officials interviewed many current and former Trump employees, at least one of whom indicated there may have been additional classified materials remaining at Mar-a-Lago[18].

To the extent that the affidavit of probable cause contains any of this information, or other details about the investigation already reported in the press, there is no compelling interest in maintaining it under seal. Instead, those portions of the affidavit should be made public even if the Court finds a compelling interest to maintain other discrete portions under seal. *See In re Four Search Warrants*, 945 F. Supp. at 1568 (releasing redacted search warrant affidavits where "much of the information" they contained had "already been made widely available to the public" through news reports).

---

[15] Glenn Thrush et al., *Trump Search Said to Be Part of Effort to Find Highly Classified Material*, New York Times (Aug. 11, 2022), https://www.nytimes.com/2022/08/11/us/politics/trump-fbi-subpoena.html.

[16] Dawsey et al., *supra* note 5; Whitehurst, *supra* note 5; Andres Triay, *Weeks before Mar-a-Lago search, Trump lawyer signed document saying all classified material had been removed*, CBS News (Aug. 15, 2022), https://www.cbsnews.com/news/trump-mar-a-lago-search-lawyer/.

[17] Haberman & Thrush, *supra* note 10.

[18] Dawsey et al., *supra* note 5; Whitehurst, supra note 5; *New insights into what may have led to warrant for searching Donald Trump's Florida compound*, NBC NEWS (Aug. 13, 2022), https://www.nbcnews.com/nightly-news/video/new-insights-into-what-may-have-led-to-warrant-for-searching-donald-trump-s-florida-compound-146116677510; *see also* Weaver & Wilner, *supra* note 6.

The government's position that any redactions would "render the document devoid of content that would meaningfully enhance the public's understanding of these events beyond the information already now in the public record," Resp. at 10, turns the presumption of public access to judicial records on its head. The public is entitled to review judicial records unless there is a compelling interest to *deny* access, not if there is a sufficient reason to *grant* access to a redacted record, as the government has suggested. And it is the public itself, not the government, that should have the opportunity to determine whether the information available enhances its understanding of this historic event.

### III.    CONCLUSION

For the foregoing reasons, and those set forth in their motions, the Media Intervenors respectfully request that the Court unseal any and all search warrant records. If the Court determines through *in camera* review that a compelling interest justifies sealing some portions of the search warrant records, the Media Intervenors respectfully request that those portions be redacted and the remainder of the records be unsealed.

Dated: August 17, 2022

THOMAS AND LOCICERO PL

By: */s/ Carol Jean LoCicero*
    Carol Jean LoCicero (FBN 603030)
    Mark R. Caramanica (FBN 110581)
    601 South Boulevard
    Tampa, FL 33606
    Telephone: 813.984.3060
    clocicero@tlolawfirm.com
    mcaramanica@tlolawfirm.com

    Dana J. McElroy (FBN 845906)
    915 Middle River Drive, Suite 309
    Fort Lauderdale, FL 33304
    Telephone: 954.703.3418
    dmcelroy@tlolawfirm.com

*Attorneys for Intervenors The New York Times Company, CBS Broadcasting Inc., the McClatchy Company, LLC, and Times Publishing Company*

SHULLMAN FUGATE PLLC

By: *Rachel E. Fugate*
    Rachel E. Fugate (FBN 144029)
    Deanna K. Shullman (FBN 514462)
    Minch Minchin (FBN 1015950)
    2101 Vista Parkway, Suite 4006
    West Palm Beach, FL 33411
    Telephone: 813.935.5098
    rfugate@shullmanfugate.com
    dshullman@shullmanfugate.com
    mminchin@shulmanfugate.com

*Attorneys for Intervenors Dow Jones & Company, Inc. and American Broadcasting Companies, Inc.*

Respectfully submitted,

BALLARD SPAHR LLP

By: */s/ Charles D. Tobin*
    Charles D. Tobin (FBN 816345)
    1909 K Street NW, 12th Floor
    Washington, DC 20006
    Telephone: 202.661.2218
    tobinc@ballarspahr.com

    Elizabeth Seidlin-Bernstein (*pro hac vice*)
    1735 Market Street, 51st Floor
    Philadelphia, PA 19103-7599
    Telephone: 215.665.8500
    seidline@ballardspahr.com

*Attorneys for Intervenors WP Company LLC, Cable News Network, Inc., NBCUniversal Media, LLC, the E.W. Scripps Company, and the Associated Press*

ATHERTON GALARDI MULLEN & REEDER PLLC

By: */s/ L. Martin Reeder, Jr.*
    L. Martin Reeder, Jr. (FBN 308684)
    1641 Worthington Road, Suite 11
    West Palm Beach, FL 33409
    Telephone: 561.293.2530
    martin@athertonlg.com

*Attorneys for Intervenor The Palm Beach Post*