UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CRIMINAL CASE NO.: 9:22-mj-08332-BER-1

IN RE SEALED SEARCH WARRANT,

_____/

FILED BY _____ cns _____ D.C.

AUG 18 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### PATRICK M. BYRNE'S CONSOLIDATED MOTION TO INTERVENE AND MEMORANDUM OF LAW FOR THE LIMITED PURPOSE OF OBTAINING ACCESS TO SEARCH WARRANT RECORDS

COMES NOW *pro se* Patrick M. Byrne and hereby moves this Honorable Court for permission to intervene for the limited purpose of obtaining access to search warrant records pertaining to President Donald J. Trump and/or President Donald J. Trump's Mar-a-Lago Palm Beach, Florida club and residence and would respectfully show unto this Honorable Court as follows:

### STATEMENT OF FACTS

1. **Facts Specific to Above-styled Case.**

On August 8, 2022, FBI agents executed a search warrant at President Donald J. Trump's residence at Mar-a-Lago, Palm Beach, Florida. The search was allegedly for records covered by the Presidential Records Act and the classification of said records. According to the docket, all entries, including the Affidavit in support of the search warrant, are sealed. *Pro se* Patrick Michael Byrne contends that said records should be unsealed in order to promote transparency, accountability and integrity in government. The government must adhere to the rule of law.

## 2. Relevant Facts within Patrick Byrne's Personal Knowledge.

The facts stated herein are based upon my personal knowledge. The dialogue quoted here was documented approximately 30-40 days after it was spoken in my book THE DEEP RIG: HOW ELECTION FRAUD COST DONALD J. TRUMP THE WHITE HOUSE, BY A MAN WHO DID NOT VOTE FOR HIM (OR WHAT TO SEND FRIENDS WHO ASK, "WHY DO YOU DOUBT THE INTEGRITY OF THE 2020 ELECTION?") 111 (2021), a book written in the last week of January, 2020 and first week of February, 2020." Declaration of Patrick Michael Byrne, ¶ 2 (attached hereto as Exhibit 1).

On the evening of Friday, December 18, 2020, Attorney Sidney Powell, General Michael Flynn, an attorney named Emily Newman who worked for Ms. Powell, and I were sitting in the Oval Office with President Donald J. Trump with the door closed. *Id* at ¶ 3.

Also present in the meeting were White House General Counsel Pat Cipollone, Attorney Patrick F. Philbin and Attorney Eric Herschmann." *Id* at ¶ 4.

In this meeting the topic of discussion revolved around how to respond to a situation where the FBI and DHS had themselves reported foreign interference being attempted in our elections (October 22), foreign interference in our election systems being successful in at least one state, and being undertaken against others, by a combination of Iran and other nation-state actors; and on December 16, 2020 an unprecedented network security hack involving a product called SolarWinds Orion. *Id* at ¶ 5.

2

During this discussion multiple different potential solutions were discussed, such as using the DHS (or FBI or joint US Marshall/National Guard) to send small teams into 6 (or 12, 31, or even only 1) counties to image the hard drive of the appropriate county election system (and/or conduct livestreamed recount and/or simply recover the election equipment for full exploitation by federal authorities), and also, appointing special counsel to investigate, which was not well-received by White House General Counsel Pat Cipollone, and to which Cipollone quipped that "Never in American history has there been this kind of a challenge to an election!" *Id* at 6.

General Flynn responded to Cipollone by stating, "Never in American history has there been a situation like this, with counting being shut down for hours, foreigners connecting to our equipment...." *Id* at ¶ 7. As White House General Counsel, one of Mr. Cipollone's primary responsibilities was to advise the President of The United States as to bounds of his lawful authority as head of the executive branch of the federal government. *Id* at ¶ 8. At one point White House General Counsel Pat Cipollone advised that Trump "does not have the authority to do this!" *Id* at ¶ 9. Attorney Sidney Powell responded "Oh course he does!" citing Executive Order 13848. *Id* at ¶ 10.

White House General Counsel Pat Cipollone grew frustrated with the topic of conversation and made it clear that he did not want any involvement with the proposed courses of action, eventually stating, "Hey if you want to do this you don't need my permission. You don't even need a pen or a piece of paper. You can just say, 'I hire Sidney Powell as White House Special Counsel,' and it's done." *See also* Byrne,

3

*supra*, at 117; *Marbury v. Madison*, 1 Cranch 137, 138, 157, (1803) (stating that the point in time in which the constitutional power of appointment has been exercised is when the last act required from the person performing the power has been performed). *Id* at ¶ 11.

After approximately 30 minutes more discussion, President Trump stated to White House General Counsel Pat Cipollone "You know Pat? A few minutes ago you said that I can make it happen just by *saying* it. Well.... OK. I have decided, now I'm saying it. 'Sidney Powell is hereby appointed as White House Special Counsel.' *Id* at ¶ 12. Another White House lawyer interjected stating that Sidney Powell needs a clearance and "it'll take months to get her a clearance." *Id* at ¶ 13. General Michael Flynn responded to this objection by stating "Mr. President, you can do the same thing with a clearance. You can grant any clearance you want, on the spot, verbally." *See also* Byrne, *supra*, at 120; *Marbury v. Madison*, 1 Cranch 137, 138, 157, (1803) (stating that the point in time in which the constitutional power of appointment has been exercised is when the last act required from the person performing the power has been performed). *Id* at ¶ 14.

Immediately thereafter President Donald J. Trump stated to his White House lawyers, "I grant Sidney Powell a Top Secret security clearance." Byrne, *supra*, at 120. Whereupon the White House counsels were angry, but did not dispute Trump's actions, but instead left the room angrily. *Id* at ¶ 15.

I have read *Marbury v. Madison*, 5 U.S. 137 (1803), which states that "A commission is not necessary to the appointment of an officer by the executive. ... A

4

commission is only *evidence* of an appointment." (emphasis in original). *Id* at ¶ 16. I witnessed White House lawyers advise the President of his power to verbally appoint government officials. *Id* at ¶ 17. I witnessed a former National Security Advisor advise the President of his power to verbally grant any level security clearance to a person on the spot. *Id* at ¶ 18. On December 18, 2020, I witnessed *Marbury v. Madison* in action. *Id* at ¶ 19. On December 18, 2020, I witnessed White House General Counsel advise the President that he could make a verbal appointment. *Id* at ¶ 20.

On December 18, 2020, I witnessed President Donald J. Trump verbally appoint Attorney Sidney Powell to the position of White House Special Counsel. *Id* at 21. On December 18, 2020, Attorney Sidney Powell held the position of White House Special Counsel. *Id* at ¶ 22. On December 18, 2020, I witnessed General Michael Flynn, who was the 24th United States National Security Advisor, advise the President that he could verbally grant, on the spot, any security clearance level. *Id* at ¶ 23. On December 18, 2020, I witnessed President Donald J. Trump verbally grant White House Special Counsel Sidney Powell a Top Secret security clearance. *Id* at ¶ 24. On December 18, 2020, White House Special Counsel Sidney Powell held a Top Secret security clearance. *Id* at ¶ 25.

In January 2022, I had the opportunity of a social visit with the Honorable Rudy Giuliani. Over the course of lunch, I asked him what happened such that our conversation in the White House had not been implemented. Mr. Giuliani told me that after our party had left the White House at approximately 12:15 AM December 19, 2020, he spoke to the President for an additional 2-3 minutes whereupon the

5

Byrne Motion to Unseal-2-Byrne Motion to Unseal.pdf
Case 9:22-mj-08332-BER Document 71 Entered on FLSD Docket 08/18/2022 Page 6 of 7
file:///C:/Users/Dan/Downloads/Byrne%20Motion%20to%20Unseal.pdf

In *Marbury*, the final act of appointing Marbury had been completed. In those days, the final act was affixing the presidential seal to Marbury's appointment. The completion of the final act is what is required before the power of the President has been exercised. The final act can include affixing the presidential seal to a document appointing a justice of the peace, as was done in *Marbury v. Madison*. The final act can also include a verbal appointment of a special counsel. All that is required is the completion of the final act. In *Marbury*, the appointment was made when William Marbury was not in presence of the President. The final act was affixing the seal to the document appointing him, which would then be delivered to Marbury. The final act can also include a verbal appointment if the recipient is in the presence of the President.

In this case, President Trump's Mar-a-Lago residence was raided for alleged violations of the Presidential Records Act. However, President Trump verbally declassified all of the records in question and that were targeted in said search warrant. As *Marbury v. Madison* makes clear, the final act is all that is required before the presidential act is complete. President's Trump's lawyers advised him that he can speak into existence the powers of the President, which would then be evidenced by a subsequent document, commission, *etc*. Evidence that the President has the power to verbally appoint special counsel has been lawfully exercised and upheld in my presence. The power of the President to verbally grant/appoint any security clearance level by speaking it into existence has been lawfully exercised and

8

upheld in my presence. The verbal exercise of presidential power is nothing new; it is the requisite final act.

As in *Marbury*, the final act was complete in this case when President Trump verbally declassified the documents that were confiscated in the raid on President Trump's Mar-a-Lago residence. There was no violation of the Presidential Records Act. The final act was speaking the decree into existence even though the declassification of said documents had not yet been evidenced. The search warrant was unlawful and improper and should have never been issued. The government cannot classify documents that have already been declassified. As such, this Court should unseal all documents relating to this search warrant so that the public can see the events that transpired prior to this unprecedented raid on President Trump's Mar-a-Lago residence. These documents should be unsealed *instanter* and for the foregoing reasons this motion to unseal should be GRANTED.

Respectfully submitted this 18th day of August, 2022.

/s/ Patrick Michael Byrne
Patrick Michael Byrne
8388 S. Tamiami Trail
Suite 293
Sarasota, FL 34238
T: 615-554-1510
Email: info@americaproject.com
*Pro se* Movant

Prepared with the Assistance of Counsel:
Russell A. Newman, TN BPR# 033462
253 Tamiami Trail South
Suite 120
Nokomis, FL 34275
T: 615-554-1510
Email: russell@thenewmanlawfirm.com