UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

UNITED STATES OF AMERICA

                                                  Case No.: 9:22-mj-08332-BER

v.

SEALED SEARCH WARRANT

_____/

**MEDIA INTERVENORS' MOTION FOR FURTHER
UNSEALING OF SEARCH WARRANT AFFIDAVIT**

Intervenors American Broadcasting Companies, Inc.; the Associated Press; Cable News Network, Inc. ("CNN"); CBS Broadcasting Inc.; Dow Jones & Company, Inc., publisher of *The Wall Street Journal*; the E.W. Scripps Company ("Scripps"); *The Palm Beach Post*, a newspaper owned and operated by Gannett Co., Inc.; NBCUniversal Media, LLC d/b/a NBC News; The New York Times Company; Times Publishing Company, publisher of the *Tampa Bay Times*; and WP Company LLC d/b/a *The Washington Post* and Proposed Intervenors Bloomberg LP and Gray Media Group, Inc. d/b/a WCJB-TV, WJHG-TV, and WWSB-TV (the "Gray Stations")[1] (collectively, the "Media Intervenors") hereby move for an order further unsealing portions of the affidavit of probable cause submitted in connection with the search warrant executed on August 8, 2022 at former President Donald J. Trump's residence at the Mar-a-Lago Club (the "Affidavit").[2]

---

[1] Bloomberg LP and the Gray Stations move to intervene in this matter for the limited purpose of seeking access to judicial records. *See Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1170 (11th Cir. 2019) ("The press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records.").

[2] Counsel for the Associated Press, Bloomberg LP, CNN, the Gray Stations, NBC News, Scripps, and *The Washington Post* and for The New York Times Company, CBS Broadcasting

**ARGUMENT**

Recognizing "the intense public and historical interest in an unprecedented search of a former President's residence," Order at 13 (ECF No. 80), this Court entered an order on August 25 granting the Media Intervenors' motion to unseal in part and directing the Government to file a redacted version of the Affidavit on the public docket the following day. Aug. 25 Order (ECF No. 94); *see also* Notice of Filing of Redacted Aff. (ECF No. 102-1) (redacted Affidavit as publicly filed). At that time, the Court held that the Government had "met its burden of showing that its proposed redactions [were] narrowly tailored to serve the Government's legitimate interest in the integrity of the ongoing investigation." Aug. 25 Order at 1-2.

Since then, additional judicial records related to the investigation into the former President's handling of classified materials have been filed in two separate proceedings: (1) a proceeding before Judge Cannon in this District brought by Trump to seek the appointment of a special master and other judicial oversight, *Trump v. United States*, No. 9:22-cv-81294-AMC (S.D. Fla.) (the "Special Master Proceeding"), and (2) an emergency application by the Government before Chief Judge Howell of the District Court in Washington, D.C., for permission to disclose certain information about the underlying grand jury investigation in connection with the Special Master Proceeding, *In re Application of USA for Order Pursuant to Fed. R. Crim. P. 6(E)(3)(e)(i) for Limited Disclosure of Matter Occurring Before a Grand Jury*, No. 1:22-gj-37-BAH (D.D.C.) (the "Grand Jury Proceeding").[3] Those documents—which were either publicly filed to begin with or have since been unsealed—include Trump's motion for

---

Inc., and the *Tampa Bay Times* conferred with government counsel regarding this request and were advised that the government does not oppose the filing of this motion.

[3] Unsealed documents from the Grand Jury Proceeding can be found at https://www.dcd.uscourts.gov/unsealed-orders-opinions-documents/Grand%20Jury/2022.

judicial oversight ("Trump Mot.") (Special Master Proceeding ECF No. 1), the Government's brief in response ("Gov't Resp.") (*id.* ECF No. 48), Trump's reply (*id.* ECF No. 58), the investigative team's notice regarding the status of its review of the seized property (*id.* ECF No. 39), a more detailed property receipt (*id.* ECF No. 39-1), the Government's emergency application to disclose grand jury information (Grand Jury Proceeding, ECF No. 4), and Chief Judge Howell's order granting the emergency application (*id.*, ECF No. 2), among others. Together, they reveal many additional details about the investigation that may have been redacted in the version of the Affidavit made available to the public on August 26 (ECF No. 102-1).

For example, the Government's brief in the Special Master Proceeding provides "a detailed recitation of the relevant facts" to counter what the Government describes as "the incomplete and inaccurate narrative set forth in" Trump's filings. Gov't Resp. at 3. Among other things, the brief discloses that:

- When producing fifteen boxes of classified documents to the National Archives and Records Administration ("NARA") in January 2022, Trump "never asserted executive privilege over any of the documents nor claimed that any of the documents in the boxes containing classification markings had been declassified." *Id.* at 4;

- NARA's February 9, 2022 referral to the Department of Justice ("DOJ") was "made on two bases: evidence that classified records had been stored at the Premises until mid-January 2022, and evidence that certain pages of Presidential records had been torn up. Related to the second concern, the NARA Referral included a citation to 18 U.S.C. § 2071." *Id.* at 5;

3

- On April 12, 2022, NARA advised counsel for the former President that it intended to provide the FBI with the records the following week (*i.e.*, the week of April 18)." *Id.* at 5. That day, counsel for the former President asked NARA for an extension of its anticipated production of classified records to the Department of Justice. *Id.* at 5-6. In the event that the extension was not granted, Trump's counsel asked that the letter it sent NARA be construed as a "protective assertion of executive privilege." *Id.* at 6;

- After developing "evidence indicating that even after the Fifteen Boxes were provided to NARA, dozens of additional boxes remained at the Premises that were also likely to contain classified information," the Government "obtained a grand jury subpoena, for which the former President's counsel accepted service on May 11, 2022." *Id.* at 7-8. Copies of the grand jury subpoena and enclosure letter were publicly filed as attachments to the Government's brief in the Special Master Proceeding. *Id.* Attachments C and D;[4]

- The subpoena had a return date of May 24, 2022. Trump's counsel "sought an extension for complying. After initially denying the request, the government offered counsel an extension for complying with the subpoena until June 7, 2022. Counsel for the former President contacted DOJ on the evening of June 2, 2022, and requested that FBI agents meet him the following day to pick up responsive documents." *Id.* at 8;

---

[4] The Government's emergency application to disclose grand jury information and resulting order also reference a second grand jury subpoena for surveillance video footage issued to the Trump Organization on June 24, 2022. Aug. 29 Order at 1, Grand Jury Proceeding (ECF No. 2); Emerg. Appl. for Order at 7, Grand Jury Proceeding (ECF No. 4). Trump's motion for judicial oversight references a June 22, 2022 subpoena for surveillance video footage as well. Trump Mot. at 6. It is unclear whether these subpoenas are one and the same.

- "On June 3, 2022, three FBI agents and a DOJ attorney arrived at the Premises to accept receipt of the materials. In addition to counsel for the former President, another individual was also present as the custodian of records for the former President's post-presidential office. When producing the documents, neither counsel nor the custodian asserted that the former President had declassified the documents or asserted any claim of executive privilege. Instead, counsel handled them in a manner that suggested counsel believed that the documents were classified: the production included a single Redweld envelope, double-wrapped in tape, containing the documents." *Id.* at 8-9;

- The individual designated as the custodian of records provided a sworn certification, which was publicly filed as an attachment to the Government's brief in the Special Master Proceeding, stating that a "diligent search" for responsive records had been conducted. *Id.* at 9; *Id.* at Attachment E;

- "After producing the Redweld, counsel for the former President represented that all the records that had come from the White House were stored in one location—a storage room at the Premises (hereinafter, the 'Storage Room'), and the boxes of records in the Storage Room were 'the remaining repository' of records from the White House. Counsel further represented that there were no other records stored in any private office space or other location at the Premises and that all available boxes were searched." *Id.* at 9;

- "[T]he FBI agents and DOJ attorney were permitted to visit the storage room," but "the former President's counsel explicitly prohibited government personnel from opening or looking inside any of the boxes that remained in the storage room, giving

5

no opportunity for the government to confirm that no documents with classification markings remained."[5] *Id.*;

- "Once in a secure government setting, the FBI conducted a preliminary review of the documents contained in the Redweld envelope. That preliminary document review revealed the following: 38 unique documents bearing classification markings, including 5 documents marked as CONFIDENTIAL, 16 documents marked as SECRET, and 17 documents marked as TOP SECRET. Further, the FBI agents observed markings reflecting sensitive compartments and dissemination controls. Counsel for the former President offered no explanation as to why" the records remained at Mar-a-Lago. *Id.* at 10; and

- "Through further investigation, the FBI uncovered multiple sources of evidence indicating that the response to the May 11 grand jury subpoena was incomplete and that classified documents remained at the Premises, notwithstanding the sworn certification made to the government on June 3. In particular, the government developed evidence that a search limited to the Storage Room would not have uncovered all the classified documents at the Premises. The government also developed evidence that government records were likely concealed and removed from the Storage Room and that efforts were likely taken to obstruct the government's

---

[5] The Government's application to disclose grand jury information further revealed that Government personnel observed "approximately fifty to fifty-five boxes" in the storage room. Emerg. Appl. at 5, Grand Jury Proceeding.

investigation," including "evidence indicating that boxes formerly in the Storage Room were not returned prior to counsel's review."[6]  *Id.* at 10.[7]

When the circumstances that once justified sealing cease to exist, sealing is no longer appropriate.  *See, e.g.*, *United States v. Doe*, 629 F. App'x 69, 74 (2d Cir. 2015) (directing government "to inform the district court" should "the conditions for unsealing . . . come to pass"); *United States v. Appelbaum* (*In re United States*), 707 F.3d 283, 295 (4th Cir. 2013) (recognizing that public was "not forever barred from access . . . because at some point in the future, the Government's interest in sealing may no longer outweigh the common law presumption of access"); *United States v. Steinger*, 626 F. Supp. 2d 1231, 1237 (S.D. Fla. 2009)

---

[6] Trump's motion for judicial oversight also states that "members of his personal and household staff were made available for voluntary interviews by the FBI" after the June 3 visit.  Trump Mot. at 6.

[7] *See also, e.g.*, Amber Phillips, *The major revelations from the investigation of what Trump took to Mar-a-Lago*, Washington Post (Sept. 3, 2022), https://www.washingtonpost.com/politics/2022/09/03/trump-investigation-mar-a-lago-explained/; Glenn Thrush et al., *Documents at Mar-a-Lago Were Moved and Hidden as U.S. Sought Them, Filing Suggests*, N.Y. Times (Aug. 31, 2022), https://www.nytimes.com/2022/08/31/us/politics/trump-mar-a-lago-documents.html; Jeremy Herb et al., *Takeaways from the historic Justice Department court filing on the Mar-a-Lago search*, CNN (Aug. 31, 2022), https://www.cnn.com/2022/08/31/politics/takeaways-mar-a-lago-documents/index.html; Tina Davis, *Five Things We Learned From the Latest Filing on the Trump Mar-a-Lago Search*, Bloomberg (Aug. 31, 2022), https://www.bloomberg.com/news/articles/2022-08-31/five-revelations-from-doj-s-latest-filing-on-mar-a-lago-search; Alexander Mallin & Katherine Faulders, *Trump's filing opposing Mar-a-Lago raid forced DOJ's hand, experts say*, ABC News (Aug. 31, 2022), https://abcnews.go.com/US/trumps-filing-opposing-mar-lago-raid-forced-dojs/story?id=89117807; Eric Tucker et al., *Feds cite efforts to obstruct probe of docs at Trump estate*, Associated Press (Aug. 31, 2022), https://apnews.com/article/mar-a-lago-government-and-politics-1fef158c3a66bfc0ba6224570753ba47; Robert Legare & Melissa Quinn, *Justice Dept. alleges 'obstructive conduct' occurred at Mar-a-Lago after requet for classified documents*, CBS News (Aug. 31, 2022), https://www.cbsnews.com/news/trump-search-justice-department-filing-classified-documents-obstruction/; Sadie Gurman et al., *DOJ Points to Likely Obstruction in Investigation of Documents at Trump's Mar-a-Lago*, Wall St. Journal (Aug. 31, 2022), https://www.wsj.com/articles/donald-trump-bolsters-florida-legal-team-11661870344.

(recognizing that once circumstances change, "certain documents may be completely unsealed, and others might be filed in public record with certain redactions"); *see also* Aug. 18, 2022 Hr'g Tr. at 30:6-9 (confirming that Court would address any future request for unsealing "in the full context in which it arises").

Here, the Government's justifications for maintaining portions of the Affidavit under seal were that "disclosure would reveal (1) the identities of witnesses, law enforcement agents, and uncharged parties, (2) the investigation's strategy, direction, scope, sources, and methods, and (3) grand jury information protected by Federal Rule of Criminal Procedure 6(e)." Order to Unseal at 1 (ECF No. 94). The recent filings in the Special Master Proceeding and the Grand Jury Proceeding suggest that those concerns no longer apply to at least some of the information that was originally redacted in the Affidavit. *See also Wash. Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) ("Because disclosure of the contents of the plea agreement would only have confirmed to the public what was already validated by an official source – that McWilliams had agreed to cooperate with the government – it could hardly have posed any additional threat to the ongoing criminal investigation."); *CBS v. U.S. Dist. Ct.*, 765 F.2d 823, 825 (9th Cir. 1985) (finding alleged harms not compelling where much of the information to be sealed "might easily be surmised from what is already in the public record"); *In re The Herald Co.*, 734 F.2d 93, 101 (2d Cir. 1984) ("Though the basis for apprehending harm to the defendant is apparent, the record raises a question as to whether the information sought to be kept confidential has already been given sufficient public exposure to preclude a closure order on this account."). Accordingly, the redactions on those portions of the Affidavit should be lifted.

In addition to the information about the investigation already disclosed in the Government's various filings, the Court also should lift the seal as to any information that the

former President disclosed in his own filings in the Special Master Proceeding.  In its emergency application to disclose grand jury information, the Government noted that Trump's filings had already revealed the existence of a grand jury subpoena, "as well as factual detail related to [Trump's] response and the visit by government personnel to Mar-a-Lago."  Emerg. Appl. at 13, Grand Jury Proceeding, ECF No. 4.  As the Government acknowledged, "there is little risk of undermining the willingness and candor of witnesses called before the grand jury," "alerting the target of an investigation who might otherwise flee or interfere with the grand jury," or harming "the rights of a suspect who might later be exonerated" when Trump himself revealed the information.  *Id.* at 13-14.

Indeed, the Government has already taken the position that it cannot "any longer establish a 'sufficiently important interest in secrecy' vis-à-vis the limited and discrete aspects of the grand jury investigation that have already been publicly revealed."  Second Appl. for Order at 5, Grand Jury Proceeding, ECF No. 6.  On September 7, the Government sought permission from Chief Judge Howell to disclose "the existence of the May 11, 2022 subpoena, the response thereto, and the course of correspondence and in-person consultation stemming from it, as well as the existence of the June 24, 2022 subpoena for video surveillance footage and the response thereto."  *Id.* at 8.  As the Government explained, "there is no remaining secrecy consideration whatsoever, given that the material has already been disclosed in the" Special Master Proceeding.  *Id.* at 6.  Chief Judge Howell agreed and granted the application.  Order, Grand Jury Proceeding, ECF No. 7.

## CONCLUSION

For the foregoing reasons, the Media Intervenors respectfully request that the Court enter an order further unsealing portions of the Affidavit.  Specifically, the Media Intervenors request that the Court (1) direct the Government to submit a new version of the Affidavit *in camera* that

9

includes only those redactions the Government contends continue to be justified by a legitimate interest in the integrity of the ongoing investigation, (2) direct the Government to file a public redacted version of its brief simultaneously with any brief it files under seal in in conjunction with its *in camera* submission of proposed redactions to the Affidavit, (3) conduct an independent review of the Government's proposed redactions to determine whether they would unseal all of the portions that no longer pose a risk to the investigation in light of the recent court filings discussed above, and (4) make a new redacted version of the Affidavit available on the public docket.

Dated: September 12, 2022         Respectfully submitted,

THOMAS AND LOCICERO PL            BALLARD SPAHR LLP

By: */s/ Carol Jean LoCicero*         By: */s/ Charles D. Tobin*
    Carol Jean LoCicero (FBN 603030)      Charles D. Tobin (FBN 816345)
    Mark R. Caramanica (FBN 110581)       1909 K Street NW, 12th Floor
    601 South Boulevard                   Washington, DC 20006
    Tampa, FL 33606                       Telephone: 202.661.2218
    Telephone: 813.984.3060               tobinc@ballardspahr.com
    clocicero@tlolawfirm.com
    mcaramanica@tlolawfirm.com            Elizabeth Seidlin-Bernstein (*pro hac vice*)
                                          1735 Market Street, 51st Floor
    Dana J. McElroy (FBN 845906)          Philadelphia, PA 19103-7599
    915 Middle River Drive, Suite 309     Telephone: 215.665.8500
    Fort Lauderdale, FL 33304             seidline@ballardspahr.com
    Telephone: 954.703.3418
    dmcelroy@tlolawfirm.com           *Attorneys for Intervenors the Associated Press, Cable News Network, Inc., NBCUniversal Media, LLC, the E.W. Scripps Company, and WP Company LLC and Proposed Intervenors Bloomberg LP and Gray Media Group, Inc.*

*Attorneys for Intervenors The New York Times Company, CBS Broadcasting Inc., and Times Publishing Company*

| SHULLMAN FUGATE PLLC | ATHERTON GALARDI MULLEN & REEDER PLLC |
|---|---|
| By: */s/ Rachel E. Fugate*<br>   Rachel E. Fugate (FBN 144029)<br>   Deanna K. Shullman (FBN 514462)<br>   Minch Minchin (FBN 1015950)<br>   2101 Vista Parkway, Suite 4006<br>   West Palm Beach, FL 33411<br>   Telephone: 813.935.5098<br>   rfugate@shullmanfugate.com<br>   dshullman@shullmanfugate.com<br>   mminchin@shulmanfugate.com<br><br>*Attorneys for Intervenors Dow Jones & Company, Inc. and American Broadcasting Companies, Inc.* | By: */s/ L. Martin Reeder, Jr.*<br>   L. Martin Reeder, Jr. (FBN 308684)<br>   1641 Worthington Road, Suite 11<br>   West Palm Beach, FL 33409<br>   Telephone: 561.293.2530<br>   martin@athertonlg.com<br><br>*Attorneys for Intervenor The Palm Beach Post* |

11